# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF NEW HAMPSHIRE

------------------------------------------------------------

In re:

SHEPHERDS HILL DEVELOPMENT CO., LLC

        Debtor

------------------------------------------------------------

CHAPTER 11
Case No. BK-99-11087-JMD

Hearing Date:  July 18, 2000
Hearing Time:  9:00 a.m.

## PROPONENT'S THIRD AMENDED PLAN OF REORGANIZATION DATED JULY 5, 2000 AS MODIFIED ON JULY 18, 2000 TO CLARIFY AND ADDRESS OR RESOLVE CERTAIN OBJECTIONS

Pursuant to Section 1125 of the Bankruptcy Code of 1978, as amended, 11 U.S.C. §101 et seq. (the "Code"), Caesar Balzotti, Ralph Caruso and Ernest Thibeault (collectively, the "Proponent") are submitting this Third Amended Plan of Reorganization, as now existing and as amended from time to time hereafter in accordance with the provisions of Section 1123 of the Code (the "Plan") to the United States Bankruptcy Court for the District of New Hampshire (the "Court") and its Creditors and Equity Holders in accordance with the provisions of Section 1123 of the Bankruptcy Code for acceptance and confirmation.

Respectfully submitted,

DATED:  July 18, 2000

William S. Gannon, BNH01222

Attorney for:

CAESAR BALZOTTI.

WADLEIGH, STARR & PETERS P.L.L.C.
95 Market Street
Manchester NH        03101
PH:  603-669-4140

DATED: July 18, 2000

Edward A. Jordan

G:\D42000\42401\DISCPLAN\PLAN6718.WPD - Pg. 1

Attorney for:

RALPH CARUSO
ERNEST THIBEAULT

JORDAN, MAYNARD & PARODI, PLLC
40 East Pearl Street
Nashua  NH        03060]
(603) 881-5800

*Effective Date = 8/10/00*

## 1.0  INTRODUCTION

**1.1  Effective Date.**  Subject to the Conditions Precedent set forth herein, this Plan shall become effective on the 10th day following the date on which the order confirming this Plan (the "Confirmation Order") shall become Final (the "Effective Date" and the "Final Confirmation Order" and "Confirmation", respectively).

**1.2  Conditions Precedent.**  Notwithstanding Final Confirmation, the financial liabilities and other obligations of the Reorganized Debtor and the Plan Proponents or their nominees (the "Benefitted Parties") under this Plan are, and shall be conditioned on the satisfaction of the following conditions precedent to the reasonable satisfaction of the Benefitted Parties acting in good faith and exercising reasonable business judgment:

1.2.1  The entry of a Final Confirmation Order which contains the provisions described in Paragraph 4.1.4.

**1.3  Purpose of Plan and Effect of Confirmation.**  On Final Confirmation, this Plan it will become a binding contract among the Debtor, Reorganized Debtor and its Creditors, Equity Holders and any other Parties in Interest (collectively,"Parties in Interest").  This Plan shall be enforceable against any Plan Party in the Bankruptcy Court or any other court of competent jurisdiction. Only Creditors and Equity Holders holding Allowed Claims or Interests shall be eligible to receive any dividends or distributions of property provided for herein ("Dividends").  As used herein, the term "Reorganized Debtor" means the Debtor following Confirmation.

**1.4  Definitions; Rules of Construction and Terms of Art.**

**1.4.1  Special Definitions.**  As used in this Plan, the term:

A.  "Class Interest Rate" means the rate of interest to be paid to Creditors holding Allowed Claims under the terms of this Plan, if any.

B.  "Incorporated Documents" means and includes the following

documents:

       1)     The Bankruptcy Real Estate Development Agreement to be entered into by and between the Debtor, Ralph Caruso, as an individual ("Caruso") and the Development Contractor subject to the approval of this Court, as such terms are defined and used therein;

       2)     Negative Pledge Agreement to be entered into by and among the Trustee, Edmond J. Ford, Esquire (the "Trustee"), the Reorganized Debtor and the members of the Reorganized Debtor, including Balzotti, Caruso and  Thibeault if they elect to hold their New Equity in corporations, limited liability companies or other limited liability entities; and

       3)     Tolling Agreement to be entered into by and between Pamela Dritt ("Dritt") and Anthony Balzotti, Caesar Balzotti, Dawn Balzotti, Michael Balzotti, as individuals, and Platinum Construction (the "Potential Dritt Defendants") for the purpose of permitting Dritt to maintain any and all causes of action she may have related to her loans to the Debtor, the use of the loan proceeds, or the overall management of Shepherds Hill as against any or all of the Potential Dritt Defendants for a period equal to the term of the Plan, plus 12 months (the "Dritt Tolling Agreement").

       4)     Purchase and Sale Agreement entered into by and between the Reorganized Debtor and Caruso and/or Thibeault or their Nominees pursuant to which the Buyers have agreed to cause to be purchased 100 lots at a minimum price of $20,000 per Site.

       C.     "Funding Obligations" means and includes all of the financial liabilities and other obligations of the Reorganized Debtor's members and the Development Contractor and its members (collectively, the  "Funders") under the terms of the Development Agreement and this Plan.

D.    "Available Distributable Proceeds" means, in reference to any class, the distributable proceeds of any transaction, less the amount or amounts paid to Senior Classes of Creditors pursuant to the Plan.

E.    "Distributable Proceeds" means and includes (i) $20,000 from each sale of an unimproved site by the Reorganized Debtor or a sale of an Improved Site with respect to which no Loan shall have been made to the Reorganized Debtor (a "Site Sale") and (ii) $20,000 from each Loan made to the Reorganized Debtor to finance the construction of units on one or more Sites on the Real Property (a "Loan") which shall be disbursed in accordance with the terms of this Plan.  To the extent Distributable Proceeds shall be paid to the Holder of an Allowed Secured Claim, they are also referred to as "Partial Discharge Payments".  Under no circumstances shall any of the impact or other fees becoming due Hudson under the terms of the "Provisions Pertaining to Development Permits" attached as Exhibit B reduce or diminish the calculation or amount of Distributable Proceeds to be paid creditors holding Allowed Claims.

F.    "Retail Sale" means and includes each sale of a Unit to a consumer or other end user.

G.    "Transaction" means and includes each Site Sale and Loan.

**1.4.2  Additional Definitions; Rules of Construction.**

A.    Pamela Dritt, a Creditor and Equity Holder of the Debtor, is not, and shall not be deemed to be a fiduciary with respect to Creditors or Equity Holders.

B.    Capitalized words, terms and phrases shall have, and be given the meaning attributed to them in the in the body of this Plan or the Glossary attached as *Exhibit A* (the "Plan Definition").  In addition, the rules of construction given in the Glossary shall be used in the interpretation of this Plan (the "Plan Rule").

**1.4.3  Incorporation of Bankruptcy Code and Bankruptcy Rules.**  The

definitions and rules of construction given in the Bankruptcy Code of 1978, <u>as amended</u>, 11 U.S.C. §101 <u>et seq.</u> (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP") are incorporated herein by reference and shall be used except in those instances in which doing so would conflict with a Plan Definition or Plan Rule.

**1.4.4   Terms of Art.** In the absence of a definition, words, terms or phrases which are customarily used in disclosure statements and plans of reorganization ("Terms of Art") shall be given the meaning generally attributed to them by federal courts in cases arising under the Bankruptcy Code.

## 2.0   CLASSES AND PROVISIONS APPLICABLE TO ALL CLASSES

**2.1   Plan Classes.**   On Final Confirmation, all of the Debtor's Creditors and Equity Holders and the Claims and Interests will be divided into the following Unclassified Claims and Classified Claims Classes which may be referred to by their Class Titles or Class Numbers:

**2.1.1   Unclassified Claims Classes.**  The only Unclassified Class is the Administrative Claims Class.

**2.1.2   Classified Claims Classes.**  The Classified Claims Classes are:

A.      Class 1 - Real Estate Tax Claim Class.

B.      Class 2-A - Vigeant Secured Claim Class.

C.      Class 2-B - Combat Secured Claim Class.

D.      Class 3 - Senior Unsecured Claims Class.

E.      Class 4 - Junior Unsecured Claims Class.

F.      Class 5 - Subordinate Claim Class.

G.      Class 6 - Equity Interest Holders Class.

**2.2   Provisions Applicable to All Secured Claims.**

**2.2.1   Retention of Liens.**  All Creditors whose Claims are treated as secured in

the Plan shall retain their liens on the collateral securing their respective Claims until such Claims are paid in full in the amount allowed as secured.

**2.2.2  Modification of Liens.**  All Creditors holding Allowed Secured Claims shall be required to execute and deliver Partial Discharges of Mortgage or Partial Discharges of Lien on the payment to any one or more of them of an amount equal to $20,000 for each Unit Site to be released (the "Partial Discharge Payment") irrespective of whether or not any such Creditor actually receives any part of such Payment or Payments.  Except as modified by the terms of the Plan, all documents evidencing indebtedness and security in favor of each secured Creditors will remain in full force and effect.  Following Confirmation, the Plan and the Confirmation Order may be recorded and shall constitute a modification of the terms and condition of said instruments as set forth herein.

**2.3     Provisions Applicable to All Classes of Creditors.**

**2.3.1  Payment of Dividends.**  Any and all Dividends becoming payable to Class 3 Creditors holding Allowed Claims shall be paid to the Disbursing Agent for their benefit as provided for in this Plan.  Except for the Dividends to be paid to the Disbursing Agent, all other Dividends becoming payable pursuant to this Plan shall be paid directly to the Creditors holding Allowed Claims.

**2.3.2  Participation in Net Recoveries.**  In addition to any other Dividends to be paid Creditors holding Allowed Claims, all Classes of Creditors holding Allowed Claims shall be entitled to receive extraordinary Dividends from any Net Recoveries made by the Reorganized Debtor or the RAD Plaintiffs in any Litigation subject to, and on the terms and conditions set forth in Paragraph 5.8.3 of this Plan.  Net Recoveries shall be paid over to Creditor Classes in the order of their respective priorities under this Plan.  If and to the extent that any Creditor holding an Allowed Claim shall be paid any Net Recoveries made in the RAD Litigation, such Creditor shall assign that portion of its

Claim to the RAD Plaintiffs in consideration of such payment (an "Assigned Portion"), but the  Assigned Portion of the Claim shall be subordinated to all, or the unpaid portion of Allowed Class 2-A, Allowed Class 2-B and Allowed Class 3 Claims such that the Assignee of the Assigned Portion shall not be entitled to receive any Dividends on account of such Assigned Portion of the Claim until all Creditors holding Allowed Claims in such Senior Classes, including Class 3, shall have been paid in full.

**2.3.3   Setoff.**  Nothing contained in this Plan is intended to, or shall be deemed to affect the right of any Creditor to offset the amount of any pre-petition liability to the Debtor against its pre-petition claim against the Debtor.

**2.3.4   Less Favorable Treatment.**  Any Creditor holding an Allowed Claim may accept less favorable treatment than that afforded such Claim under this Plan.

**2.3.5   Satisfaction of Claims; Release of Liens.**

A.      Confirmation of this Plan shall constitute a complete satisfaction of all Claims of all Creditors except for their rights under this Plan or as may be otherwise provided for herein.

B.      Except for any Liens specifically preserved or created by this Plan (the "Surviving Liens"), the satisfaction of a Claim secured by a Lien shall result  in the discharge and release of any Lien or right to a Lien securing the payment of such Claim.

C.      Except as expressly provided for herein, no Creditor holding an Allowed Claim in any Class shall be paid or become entitled to receive any Dividend until such time as Creditors holding Allowed Claims in Senior Classes shall have been paid the Dividends due them in full.  When used in reference to a Class of Claims or equity interests, the terms "senior" and "junior" means those Classes with a lower or higher number than the subject class, as appropriate.  For example, Class 4 is senior to Classes 5, 6 and 7, but junior to Classes 1, 2 and 3.

### 3.0  UNCLASSIFIED CLAIMS CLASSES AND TREATMENT

**3.1     Unclassified Administrative Claims Class.**

      **3.1.1   Class Definition; Included Claims.** This Class consists of all Claims asserted against the Debtor by Creditors which are entitled to a priority under Section 507(a)(1).  The Debtor's real estate broker, Jody D. Keeler, intends to assert a substantial contribution claim which Keeler claims to be in the approximate amount of $45,000.

      **3.1.2   Treatment.**  On the later of the Effective Date or the Allowance Date of any Claim in this Class, the  Reorganized Debtor shall pay each Allowed Claim in this Class in full from the Confirmation Deposit, including the post-petition Real Estate Tax Claim asserted by Hudson.  If, and to the extent that the Court shall allow Keeler an administrative claim based on his substantial contributions to the case, the Reorganized Debtor shall pay it in full on the later of the (i) Effective Date or (ii) the date on which it shall be Allowed by the Court.

### 4.0 CLASSIFIED CLAIMS CLASSES AND TREATMENT

**4.1     Class 1 - Real Estate Tax Claim Class.**

      **4.1.1   Class Definition; Included Claims.**  This Class consists of the Secured Claim asserted against the Debtor by the Town of Hudson, New Hampshire (the "Local Government" or "Hudson") for unpaid real estate taxes assessed against the Real Estate to the extent secured by the statutory Lien on such Real Estate which arose and exists pursuant to RSA 80:19 (the (the "Real Estate Tax Claim" and the "Real Estate Tax Lien").

      **4.1.2   Class Treatment.** On Final Confirmation, the Real Estate Tax Claim will be automatically allowed as a Secured Claim in the full amount of the real estate taxes assessed by Hudson, with interest at the rate of 9% during the term of this Case, by the entry of the Final Confirmation Order whether or not such Order shall refer specifically

to such Claim (the "Allowed Real Estate Tax Claim").  The Reorganized Debtor shall pay the Real Estate Tax Claim as follows:

A.    On the Effective Date, the Disbursing Agent  shall pay to the Local Government an amount equal to the lesser of (i) the amount of the Allowed Real Estate Tax Claim or (ii) an amount equal to the remainder of the Cash Confirmation Deposit (the "Hudson Cash Confirmation Dividend") which shall be applied to such Real Estate Taxes in the order of their assessment.

B.    If  the Hudson Cash Confirmation Dividend shall not be sufficient to pay Hudson's Allowed Claims in full, Hudson shall be paid all of the Distributable Proceeds arising from Site Sales and Loans until such time as the deficiency shall have been paid in full in consideration of the execution and delivery of partial discharges or releases of the Sites involved in the Transaction, but in no event over a period of more than 72 months.

**4.1.3  Retention of Mortgage, Lien and Collateral.** Hudson will retain its Lien securing the payment of the Allowed Claims in this Class subject to the provisions of: (a) Paragraph 2.2, (b) the reduction of its interest rate; and (c) as may be necessary to reflect the treatment of the Allowed Claims in this Class and implement the Plan.

**4.1.4  Participation in Net Recoveries.**  In addition to the Partial Discharge Payments to be made by the Reorganized Debtor, the Allowed Secured Creditor may receive extraordinary Dividends from any Net Recoveries made by the Reorganized Debtor or the RAD Plaintiffs in any Litigation subject to, and on the terms and conditions set forth in Paragraph 5.8.3 of this Plan.  If and to the extent that Hudson shall be paid any Net Recoveries made in the RAD Litigation, the provisions of Paragraph 2.3.2 shall be applicable to Hudson, including the assignment and subordination provisions.

**4.1.5  Development Permits.** The Final Confirmation Order shall contain, or incorporate by reference the provisions set forth in Exhibit == captioned "Provisions

Relating to Development Permits".

**4.2     Class 2-A - Vigeant Secured Claim Class.**

**4.2.1  Plan Definition.**  This Class consists of all Secured Claim asserted against the Debtor to the extent allowed as Secured Claims.  Included in this Class are the Secured Claims asserted by Vigeant for principal, interest and other sums due under the terms of the Vigeant Loan Documents in the amount allowed by the Court in its decision on the Trustee's Objection to such Claim or such other amount as may be mutually acceptable to the parties (the "Vigeant Secured Claim" or "Class 2-A Claim").

**4.2.2  Class Treatment.**

A.     Any portion of the Confirmation Deposit remaining after the Reorganized Debtor shall have paid the Allowed Administrative and Real Estate Tax Claims held by Administrative Creditors and Hudson shall be paid to Vigeant in reduction of the principal balance of his Allowed Secured Claim (the "Vigeant Confirmation Payment").

B.     After the Class 1 Creditor has been paid in full, the Reorganized Debtor shall pay over all of its Distributable Proceeds within 5 business days of receiving such Proceeds to Vigeant until such time as his Class 1-A Claim has been paid in full, with interest at the rate of 10%. (the "Class Interest Rate").

C.     On the Effective Date, the Reorganized Debtor shall begin making monthly payments to Vigeant in an amount equal to the interest which accrued at the Class Interest Rate, as determined and set by the Bankruptcy Court in its Confirmation Order until the Reorganized Debtor shall have paid Vigeant the sum of $1,000,000, exclusive of interest payments, in order to prevent any deterioration in his equity cushion in the Development Property pending the closing of the first 50 Site Sales or Loans.

D.     If, and to the extent that Vigeant shall not have received at least

$250,000 during any Plan Year, the Reorganized Debtor may pay the difference within 30 days within the end of the Plan Year or Vigeant may declare a default and proceed to enforce his Modified Loan Documents under state law.

E.     Notwithstanding any other provision of the Plan, the Allowed Secured Claim will be paid in full on or before the day preceding the 5th anniversary of the Effective Date.

**4.2.3  Retention of Mortgage, Lien and Collateral.** The Secured Creditor shall retain his Mortgage and Lien securing the payment of the Allowed Claim in this Class subject to the provisions of: (a) Paragraph 2.2, (b) the reduction of Vigeant's interest rate; and (c) as may be necessary to reflect the treatment of the Allowed Claims in this Class and implement the Plan.

**4.2.4  Participation in Net Recoveries.** In addition to the Partial Discharge Payments to be made by the Reorganized Debtor, the Allowed Secured Creditor may receive extraordinary Dividends from any Net Recoveries made by the Reorganized Debtor or the RAD Plaintiffs in any Litigation subject to, and on the terms and conditions set forth in Paragraph 5.8.3 of this Plan. If and to the extent that Vigeant shall be paid any Net Recoveries made in the RAD Litigation, the provisions of Paragraph 2.3.2 shall be applicable to Hudson, including the assignment and subordination provisions.

**4.3     Class 2-B - Combat Secured Claim Class.**

**4.3.1  Plan Definition.** This Class consists of the Secured Claim asserted against the Debtor to the extent allowed as Secured Claims by Combat for infrastructure and other sitework done on the Real Estate and labor, materials and services furnished in connection with such work in the amount of $92,000 (the "Combat Secured Claim" or the "Class 2-B Claim"). Under the terms of the Plan, the balance of Combat's Claim in the approximate amount of $65,000 will be treated as a Class 3 Claim.

**4.3.2  Class Treatment.**

A.      On the Effective Date, the Reorganized Debtor shall grant Combat a valid and enforceable second mortgage of the Development Property in exchange for a discharge of its lien and lien rights.  After the Class 1 and Class 2-A Creditors have been paid in full, the Reorganized Debtor shall pay over all of its Distributable Proceeds within 5 business days of receiving such Proceeds to Combat until such time as its Class 2-B Claim has been paid in full, with interest at the federal judgment interest rate (the "Class Interest Rate").

B.      On the Effective Date, the Reorganized Debtor shall begin making monthly payments to Combat in an amount equal to the interest which accrued at the Class Interest Rate, as determined and set by the Bankruptcy Court in its Confirmation Order until the Reorganized Debtor shall have paid Vigeant the sum of $1,000,000, exclusive of interest payments, in order to prevent any deterioration in his equity cushion in the Development Property pending the closing of the first 50 Site Sales or Loans.

C.      Notwithstanding any other provision of the Plan, the Allowed Secured Claims will be paid in full on or before the day preceding the 5th anniversary of the Effective Date.

**4.3.3  Retention of Mortgage, Lien and Collateral.** The Secured Creditor will retain its Lien securing the payment of the Allowed Claim in this Class subject to the provisions of: (a) Paragraph 2.2, (b) the  change in its  interest rate; and (c) as may be necessary to reflect the treatment of the Allowed Claim in this Class and implement the Plan.

**4.3.4  Participation in Net Recoveries.**  In addition to the Partial Discharge Payments to be made by the Reorganized Debtor, the Allowed Secured Creditor may receive extraordinary Dividends from any Net Recoveries made by the Reorganized Debtor or the RAD Plaintiffs in any Litigation subject to, and on the terms and conditions

set forth in Paragraph 5.8.3 of this Plan.   If and to the extent that Combat shall be paid any Net Recoveries made in the RAD Litigation, the provisions of Paragraph 2.3.2 shall be applicable to Hudson, including the assignment and subordination provisions.

4.4     Class 3 – Senior Unsecured Claims Class.

**4.4.1  Class Definition; Included Claims.** This Class consists of all Unsecured Claims without Priority asserted against the Debtor (the "Senior Unsecured Creditors"), except for those specifically included in the Junior Unsecured Claims Class and Participating Claims Class.  Included in this Class are Combat, Pamela Dritt whose Claim shall be allowed in the amount of principal and accrued interest, plus such attorneys' fees as the Court shall determine to be appropriate, the amount of $846,219.43 without objection on the Effective Date, Paul Davies & Associates, Sherin & Lodgen, the Architectural Team, Gilman, McLaughlin, Maine Blasting, Maynard & Paquette Engineering, Gottesman & Hollis, Kurz Environmental, Walter & Shuffain, PC and Peluso Estimating Services which amount to $1,090,915 in the aggregate.

**4.4.2  Class Treatment.**

A.      After Class 1 and 2 Creditors holding Allowed Claims have been paid in full, the Reorganized Debtor shall pay over to the Disbursing Agent for the benefit of Class 3 Creditors holding Allowed Claims all or any remaining portion of any Available Distributable Proceeds received by the Reorganized Debtor within 5 business days of receiving them until such time as all Allowed Claims in this Class shall have been paid in full.

B.      In order to insure that the Reorganized Debtor does not sell the Project in order to avoid satisfying its obligations under the Plan, the Reorganized Debtor will enter a Negative Pledge Agreement with the Disbursing Agent for the benefit of this  Class which shall, among other things, include a provision requiring the Disbursing Agent to provide lenders with such agreements and documents as may be

reasonably requested to assure any such lender that any Mortgage of all, or any portion of the Real Estate granted to the lender will be senior and superior to the Negative Pledge Agreement and the Claims held by the Disbursing Agent in all respects.  If the Reorganized Debtor elects to submit a modified Plan for the development of the Development Property pursuant to Paragraph 12 of Exhibit B, the Reorganized Debtor shall make every reasonable effort to secure the approval of and to build and sell at least 350 Sites which should produce $7,000,000 in Distributable Proceeds and otherwise act in good faith with respect to Creditors holding Allowed Claims, including Class 3 Creditors.

4.4.3   No Cash Confirmation Dividend.  Creditors holding Allowed Claims in this Class will not be paid a Cash Confirmation Dividend.

**4.5     Class 4 - Junior Unsecured Claims Class.**

**4.5.1   Class Definition; Included Claims.**  This Class consists of the Claims held by the following Creditors:  Dawn Balzotti, and Robert Quirk (the "Junior Unsecured Creditors").

**4.5.2   Class Treatment.**  After Class 1, 2 and 3 Creditors holding Allowed Claims have been paid in full, the Reorganized Debtor shall pay over to the Disbursing Agent all or the remaining portion of any Distributable Loan Proceeds received by the Reorganized Debtor within 5 business days of receiving them until such time as all Allowed Claims in this Class shall have been paid in full.

**4.5.3   No Cash Confirmation Dividend.**  Creditors holding Allowed Claims in this Class will not be paid a Cash Confirmation Dividend.

**4.6     Class 5 - Subordinate Claim Class.**

**4.6.1**   Class Definition; Included Interests.  The only Creditor included in this Class is Platinum Construction.

**4.6.2   Class Treatment.**  After Class 1, 2, 3 and 4 Creditors holding Allowed

Claims have been paid in full, the Reorganized Debtor shall pay over to the Disbursing Agent all or the remaining portion of any Distributable Loan Proceeds received by the Reorganized Debtor within 5 business days of receiving them until such time as all Allowed Claims in this Class shall have been paid in full.

**4.7  Class 6 - Equity Interest Holders Class.**

**4.7.1  Class Definition; Included Interests.** This Class consists of the Debtor's Equity Holders of record and all persons claiming by, through or under him.

**4.7.2  Class Treatment.**   On the Effective Date, all of the membership interests held by the Debtor's Equity Holders shall be canceled automatically by the entry of the Final Confirmation Order.

**5.0  IMPLEMENTATION OF PLAN; PLAN TRANSACTIONS**

**5.1  General Provisions Relating to Implementation.**

**5.1.1  Authorization and Direction to Implement Plan.** The Final Confirmation Order shall authorize, empower and direct the Reorganized Debtor and all other Parties in Interest to effectuate and implement this Plan.  It shall be deemed to authorize and empower the Reorganized Debtor to consummate each and every Plan Transaction referred to or described in this Plan by executing and delivering the Plan Documents doing or causing to be done such acts, and executing or causing the execution of such additional documents as may be reasonably necessary for implementation of this Plan or incidental thereto in the Reorganized Debtor's opinion. Further, the Final Confirmation Order shall be deemed and interpreted to direct and require all other Parties in Interest to execute and deliver to the Reorganized Debtor any Plan Documents required of them and to do or cause the doing of such acts, and executing or causing the execution of such additional documents as may be reasonably requested by the Reorganized Debtor for the purpose of implementing this Plan subject to the right of any such Party in Interest to seek relief from the Bankruptcy Court in the

event of any disagreement.

**5.1.2   Good Faith and Fair Dealing Required.**  As required by New Hampshire law, all Parties to this Plan shall act in good faith and deal fairly with each other in connection with the implementation of this Plan and the decision to exercise, or refrain from exercising any of their privileges, remedies and rights under this Plan or New Hampshire law following Final Confirmation.  For the purposes of this Plan, "good faith" means that all Parties shall act in the same manner as would a prudent and reasonable businessperson under similar circumstances with reasonable regard for the interests of the other Parties to this Plan.

**5.1.3   Plan Transactions.**   In order to implement and fund this Plan, the Reorganized Debtor shall consummate, take and complete the transactions and actions described in this Article and the other Articles of this Plan (the "Plan Transactions") by, among other things, executing each and every agreement, contract, promissory note or other debt instrument and other writing specifically required by the terms of this Plan ("Required Plan Documents") and such others as may be customarily and usually executed in connection with similar New Hampshire transactions and may be reasonably requested by any Party to a Plan Transaction ("Supplemental Plan Documents").

**5.2   Cash Confirmation Payments.**  From the $300,000 Confirmation Deposit held or to be held by the Trustee, the Reorganized Debtor shall pay the Allowed Administrative Claims and the Allowed Claims held by Class 1 and 2 Creditors in the order of priority established by this Plan (collectively, the "Cash Confirmation Dividend Classes").  Creditors holding Allowed Claims within a Class shall be paid in full from such Deposit if possible or a pro rata share of the remainder of such Deposit if not.  If there shall be any Disputed Claim in any Cash Confirmation Dividend Class, the Cash Confirmation Dividend which may become due such Creditor shall be paid over to the Disbursing Agent for distribution in accordance with the further order or orders of the Court with respect to such Claim.  If, and to the extent that the $75,000 Confirmation

Deposit held by Edward A. Jordan, Esq. shall not be expended for engineering, condominium creation, LLC and other legal work to allow the Project to be "offered" for sale under the Attorney General Regulations, it shall be disbursed in accordance with this section.

**5.3     Debtor Restructuring Transactions.**

      **5.3.1   New Equity.**  On the Effective Date, The Reorganized Debtor will authorize the creation and interest of one or more classes of new, voting  membership interests (the "New Equity").  The New Equity will be issued to one or more limited liability companies or limited partnerships to be formed by Ralph Caruso, Caesar Balzotti and Ernest Thibeault (the "New Members").   Notwithstanding any other provision of this Plan, no person other than the New Members will be members of any entity formed by any of them to hold their interests in the Reorganized Debtor without the prior, written approval of the Disbursing Agent who shall act in good faith and exercise reasonable business-law judgment in determining whether or not to consent to any proposed transfer of all or any of the interests held by the New Members on the Effective Date.

      **5.3.2   Management; Checkwriting Authority.**  Neither Anthony or Caesar Balzotti nor any member of their families shall be the managing member of the Reorganized Debtor.  Immediately after the issuance of the New Equity, Ralph Caruso will be elected as the Manager of the Reorganized Debtor.  At no time during the term of this Plan shall any of Anthony, Caesar or Michael Balzotti or Platinum Construction have any check writing authority.

**5.4     Development Transactions.**

      **5.4.1   Development Agreement.**  On the Effective Date, the Reorganized Debtor and the Development Contractor, a New Hampshire limited liability company to be formed and owned by Ralph Caruso, Caesar Balzotti and Ernest Thibeault or their nominees will enter into the Development Agreement.

      **5.4.2   Creation of Condominium.**  The Reorganized Debtor will submit, when

engineering calculations have been surveyed and laid out, a declaration of condominium, together with any necessary supporting documents, to the Consumer Protection Division of the Office of the New Hampshire Attorney General for approval (the "Condominium Application" and "Condominium Declaration"). The Condominium Declaration shall, when approved and recorded, divide the Real Property into phases or villages containing between 50 and 100 limited common areas or "footprints" (the "Phases") based on the Development Permits issued by Hudson and the other governmental entities having jurisdiction over the Real Property or the Modified Development Permits should they come into existence. In the discretion of the Reorganized Debtor, the Condominium Declaration may create one or more owners' associations.

     **5.4.3  Infrastructure Contract; Security.**

       A.     On the Effective Date, the Reorganized Debtor shall enter into the infrastructure contract contemplated by the Development Agreement with Thibeault Corporation of New England (the "Infrastructure Contractor"). It shall require the Infrastructure Contractor to build the Loop Road and the related infrastructure required by the Development Permits at the fixed price of $1,800,000, including blasting, which shall be paid from the Net Proceeds of Retail Sales, whether by the Reorganized Debtor or a phase developer.

       B.     As security for the payment of the infrastructure price, the Reorganized Debtor shall grant the Infrastructure Contractor a valid and enforceable, fourth priority mortgage of the Real Property (the "Infrastructure Mortgage") and a collateral assignment of, and security interest in and to the Development Permits, as they exist on the Effective Date and as modified from time to time thereafter which shall contain: (a) a provision requiring the Infrastructure Contractor to subordinate the Infrastructure Mortgage to each loan or advance made to finance the construction of Units within a Phase or Village without consideration, (b) a waiver of the Infrastructure Contractor's lien rights under RSA 447 and (c) such other provisions as may be

mutually acceptable to the parties.

**5.5    Executory Contract Assumption Transactions.**  On the Effective Date, the
Reorganized Debtor will assume the following executory contracts (the "Assumed
Executory Contracts"):

5.5.1    The Development Permits issued by the federal, state and local
governments or agencies or departments thereof having jurisdiction over the real estate
or the Project.

**5.6    Executory Contract and Real Estate Lease Rejection Transactions.**  If the
Debtor has any other executory contracts or unexpired real estate leases other than
those specifically assumed pursuant to the preceding Sections, they will be deemed to
have been rejected by the Debtor simultaneously with the entry of the Final
Confirmation Order giving the non-breaching party a Rejection Claim.  Any Rejection
Claim shall constitute and be treated as a General Unsecured Claim.   Subject to the
Article titled "Disputed Claims, Objections and Adversary Proceedings" and the
provisions of the Final Confirmation Order, the Reorganized Debtor may file a timely
and appropriate Objection to any Rejection Claim

**5.7    Retention of Actions.**  "Actions" means and includes any and all  (i) statutory
causes of action created by the Bankruptcy Code and any state law causes of action
incorporated into the Bankruptcy Code by reference ("Code Actions"), such as the New
Hampshire Uniform Fraudulent Transfer Act, RSA 545-A (the "UFT Act") and (ii) other
claims, demands, causes of action and equitable rights arising under any other federal
or state statute or the common law of the State of New Hampshire (singly, "Causes of
Action" and, collectively with Code Actions, "Actions"), including those disclosed in the
Disclosure Statement, but excludes any  Actions which have been compromised or
settled with the permission of the Bankruptcy Court or will be released by the Final
Confirmation of the Plan.

**5.7.1  Retention of Certain Claims by Trustee.**  The Trustee may assert any
and all causes of action which he deems appropriate against any person, including any

of the Potential Dritt Defendants,  for the benefit of the Estate (the "Trustee's Retained Actions"). The Trustee shall not assert any cause of action against any of the Potential Dritt Defendants as long as the Plan Proponents are performing in good faith under the terms of the Plan in consideration of the Tolling Agreement to be entered into by and among the Trustee and the Potential Dritt Defendants which shall be similar to the Dritt Tolling Agreement. If, and to the extent that the Trustee shall effectuate any Net Recoveries for the benefit of the Estate as a whole, the proceeds of such Net Recoveries shall be distributed among the Creditor Classes in the order of their priorities under this Plan.

**5.8    Creditors Trust.**

**5.8.1  Establishment of Trust.**  On the Effective Date, the Debtor and Edmond J. Ford, Esquire, Trustee (the "Disbursing Agent") will enter into the Declaration of Trust of the Shepherds Hill Development Co., LLC Creditors' Trust (the "Trust") for the benefit of Class 3 Creditors holding Allowed Claims (the "Beneficiaries") which shall be satisfactory in form and substance to the Reorganized Debtor and the Disbursing Agent in order to provide the Beneficiaries with an assurance that Funds due to the Disbursing Agent under the Plan are properly accounted for and paid to the Disbursing Agent  in order to insure that the Beneficiaries will be treated equally following Confirmation and that their dividends will be paid when due.  Beneficiaries  holding a majority in amount of the Allowed Beneficiaries' Claims may elect a new Disbursing Agent on each anniversary of the Final Confirmation Date. On and after the Effective Date, the Reorganized Debtor shall (i) provide the Disbursing Agent with a monthly income and expense statement and (ii) create and maintain complete and current books of account and records of all its assets, liabilities, expenses and income which the Disbursing Agent shall have the right to inspect at any reasonable time during regular business hours.  Any material breach of the obligation to maintain complete and current records or permit the Disbursing Agent to inspect them shall be a default under the Negative Pledge Agreement if not cured within 15 days after written notice of an alleged breach

shall have been given to the Reorganized Debtor or such longer period as may be reasonably necessary to cure the alleged default.  As used herein, the term "Disbursing Agent" means and includes the Initial Disbursing Agent and any person subsequently elected by the Creditors.

**5.8.2  Execution and Recordation of Incorporated Documents.**  On the Effective Date, the parties in interest and each and every other necessary party shall enter into the following agreements, contracts and writings:

A.    The Reorganized Debtor, its members and, if any of its members shall be entities, the principals of such entities and the Disbursing Agent shall execute the Negative Pledge Agreement and record it with the Registry of Deeds for Hillsborough County, New Hampshire (the "Registry").

B.    Dritt and the Potential Dritt Defendants shall enter into the Dritt Tolling Agreement and the Trustee and the Potential Dritt Defendants shall enter into the Trustee Tolling Agreement.

C.    Thibeault Corporation of New England, Inc. and the Reorganized Debtor shall enter into their Infrastructure Contract.

D.    Thibeault and Caruso and the Reorganized Debtor shall execute the Purchase and Sale Agreements.

E.    Caruso and the Reorganized Debtor shall enter into the Bankruptcy Real Estate Development Agreement.

**5.8.3  Funding of Trust.**  On or near the Effective Date, the Debtor will assign, transfer and set over to the Disbursing Agent the Cash Confirmation Deposit for distribution in accordance with this Plan.  In addition, the Debtor's Members (other than Pamela Dritt) will pay over to the Disbursing Agent from any Net Recovery in *Anthony Balzotti et als. v. RAD Investments, LLC and Dianni* an (the "RAD Action") for distribution to Class 3 Creditors holding Allowed Claims an amount equal to the lesser of (i) such portion of any Net Recovery as may be left after making provision for the payment of any taxes becoming due as a result of the Recovery and paying Allowed

Class 2-A and 2-B Claims in full,  or (ii) such lesser amount as may be necessary to pay the Allowed Claims in Classes 2, 3, 4, 5 and 6 in full in exchange for an assignment of such Claims and any security for the payment of such Claims. Notwithstanding the assignment of any Allowed Claims in Class 2-A or 2-B, the assignees or holders of such Allowed Claims shall not receive any Dividends on account thereof until such time as the Creditors holding Allowed Class 3 Claims shall have been paid in full.

**5.8.4   Initial Distributions from Cash Confirmation Deposit.**  Within 30 days from the date on which the Bankruptcy Court enters an order approving or allowing the claims asserted by Creditors holding Allowed Administrative Claims and Claims in Classes 1 and 2, the Reorganized Debtor shall pay promptly the Administrative Creditors and Class 1 and 2 from the Cash Confirmation Deposit.

**5.8.5   Subsequent Distributions.**  From the net proceeds of Site Sales or Loans, the Reorganized Debtor shall pay over to the Disbursing Agent all Distributable Loan and Site Sale proceeds  becoming due  Beneficiaries within 5 business days of receiving them.  The Disbursing Agent shall pay the Dividends becoming due such Beneficiaries pro rata as such  funds are received by the Disbursing Agent in accordance with the terms of this Plan.  In addition, any Net Recoveries of any Action owned by the Debtor or in which the Debtor has an interest (other than the RAD Action) shall be paid over to the Disbursing Agent for redistribution to the Beneficiaries in accordance with their priorities and rights under this Plan.

**5.8.6   Disbursing Agent's Exculpation.**  The Disbursing Agent shall not be liable except for the performance of such duties and obligations as are specifically set forth in the Trust, and no implied covenants or obligations shall be read into this Trust against the Disbursing Agent.  The Disbursing Agent, and any agent, attorney or accountant employed by the Disbursing Agent shall not be liable to any Beneficiary for any action taken or omitted to be taken by it constituting simple negligence, shall be entitled to be indemnified from the Trust against all losses, costs, liabilities, damages or claims arising out of or attributable to the performance of his duties under the Trust,

except such as are attributable to his own wilful misconduct or gross negligence in the exercise or failure to exercise any right or power vested in him under the Trust.

**5.8.7  Accounting and Reliance on Professionals.**  The Disbursing Agent may consult with counsel and accountants and shall not be liable for any action taken or suffered in good faith in accordance with the advice of such counsel and accountants. As used in this paragraph only, the term "good faith" means honesty in fact in the conduct of the transaction at issue.

**5.9  Incorporation of Disclosure Statement.**  Except as provided for in the preceding Sections of this Article, the Plan will be implemented as described in the Disclosure Statement, including the Article or Articles captioned "Implementation of Plan".

## 6.0  DISPUTED CLAIMS, OBJECTIONS AND ADVERSARY PROCEEDINGS

**6.1  Certain Definitions.**  As used herein, the term:

6.1.1  "Known Dispute" means and includes any claim, demand, cause of action, equitable right, counterclaim, recoupment, offset or defense of any nature which would or might reasonably be expected to reduce and Claim against the Debtor which is actually known to the Debtor or which a reasonable person would believe exists.

6.1.2  "Disputed Claim" means only the portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) (I) either (x) scheduled by the Debtor as disputed, contingent or unliquidated, or (y) proof of which has been filed with the Court and a timely adversary proceeding, objection to the allowance of which or motion to expunge or estimate such Claim has been filed or interposed, and (ii) with respect to which such dispute or objection or motion has not been settled or determined by a Final Order allowing or disallowing or expunging such Claim or portion thereof.  To the extent a Dispute relates to the allowance of only a part of a Claim, such Claim will be treated as a Disputed Claim only to the extent of the objection.  Before the time that an objection has been or may be timely filed, a Claim shall be considered a Disputed Claim to the extent that it is described as being "contingent", "disputed" or "unliquidated"

in the Debtor's Petition or the amount of the Claim specified in the Proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated.

**6.2    Objections.**

6.2.1   Any Party in Interest may object to any Administrative Claim, including any such Claim asserted by the Debtor's counsel and other Claim asserted by any professional retained pursuant to Section 327 of the Code (collectively, a "Professional Administrative Claim" and the "Professional Administrative Claims Class") within such period of time as may be set in the Notice of Hearing on the Debtor's counsel's Application for an order approving the payment of Fees.

6.2.2   Except as permitted herein, the Debtor will retain the sole and exclusive primary right to file Objection to Claims.  All legal fees and expenses of the Debtor incurred in the prosecution of Claim Objections and in the consummation of the Plan shall be paid in accordance with the Plan.  The Debtor will file any Objections which it wishes to assert within fifteen days of the Confirmation Hearing (the "Objection Cut-Off Date"), except for those based on Accounting Disputes.  Any Objections which the Debtor has not filed by the Cut-Off Date shall be deemed to have been waived subject only to the right of other Parties in Interest to file an Objection as permitted by the Plan. Notwithstanding the passage of the Objection Cut-Off Date, the Proponent may file Objections necessary to resolve Accounting Disputes.

**6.3    Adversary Proceedings.**  As an alternative, the Debtor may request the Court to estimate a Claim or file an adversary proceeding against the holder of a Claim.  The exercise of either option shall constitute a "Dispute" and "Objection" within the meaning of this Section.

### 7.0  EFFECT OF FINAL CONFIRMATION; RETENTION OF JURISDICTION

**7.1    Discharge of Claims.**  The Reorganized Debtor will not be discharged pursuant to Section 1141.

**7.2    Title to Property of the Estate.**  On the Effective Date of this Plan, title to all of

the Property of the Estates shall be vested in the Debtor free and clear of all Liens and Encumbrances, except as otherwise provided in this Plan.

**7.3**     **Retention of Jurisdiction**.  The Court shall retain jurisdiction over this case to the extent provided in Administrative Order No. 906.  In addition, the Court will retain jurisdiction to hear and enter orders on or resolving disputes or disagreements with respect to:

       7.3.1   Professional fee applications;

       7.3.2   Applications for award of administrative expenses; with references to the rights, duties and fees of the Disbursing Agent, including entering an order discharging the Disbursing Agent;

       7.3.3   Code Actions and other  rights created by the Bankruptcy Code, adversary proceedings, contested matters, compromises and/or abandonments of the said Claims.

       7.3.4   The implementation of this Plan.