Docketed ON JUL 2 1 2000

**FILED**

JUL 2 1 2000

U.S. BANKRUPTCY COURT

## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF NEW HAMPSHIRE

---

In re:

SHEPHERDS HILL DEVELOPMENT CO., LLC

Debtor

---

CHAPTER 11
Case No. BK-99-11087-JMD

Hearing Date:  July 21, 2000
Hearing Time:  2:00 p.m.

### ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

Pursuant to the final plan and disclosure statement (Court Doc. Nos. 286 and 200 filed by Caesar Balzotti, Ralph Caruso and Ernest Thibeault (the "Plan Proponents"); and after notice having been transmitted to all creditors, equity security holders, parties in interest and other persons entitled to notice in accordance with Bankruptcy Rules 2002 and 3017; and after having reviewed the plan, the showing made by parties who attended the confirmation hearing on July 18, 19 and 21, 2000, and the Court having dictated (if applicable) any special findings and conclusions into the record at the close of the hearing,

IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

1.      The Plan, which is incorporated herein by reference, complies with the applicable provisions of the Bankruptcy Code, 11 U.S.C. § 101 - 1330.  *See 11 U.S.C. § 1129 (a)(1).*

2.      The proponent of the plan complies with the applicable provisions of section 1129.  *See 11 U.S.C. § 1129(a)(2).*

3.      The plan has been proposed in good faith and not by any means forbidden by law.  *See 11 U.S.C. § 1129(a)(3).*

4.      Any payment made or promised by the debtor or by any person issuing securities or acquiring property under the plan, for services or costs and expenses in the case or in connection with the case, or in connection with the plan and incident to this case, has been approved by, or is subject to the approval of, the Court as reasonable. *See 11 U.S.C. § 1129(a)(4).*

5.      The Debtor has disclosed the identity and affiliations of any individual

Atty. WILLIAM GANNON
to notice all parties.

proposed to serve after confirmation of the plan, as a director, officer, or voting trustee of the reorganized debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan and the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of compensation for such insider.  *See 11 U.S.C. § 1129(a)(5).*

6.      Any governmental regulatory commission with jurisdiction after confirmation of the plan, over the rates of the debtor (if applicable) has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. *See 11 U.S.C. § 1129(a)(6).*

7.      With respect to each impaired class of claims or interest of such class, being **Classes 1, 2-A, 2-B, 3, 4, 5 and 6**, each holder of a claim or interest of such class has accepted the plan; or will receive or retain under the plan on account of such Claim or Interest property of a value, as of the Effective Date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7.  If section 1111(b)(2) applies, such class will receive or retain under the plan, property of a value, as of the Effective Date of the plan, not less than the value of such holder's interest in the estate's interest in the property securing claim.  *See 11 U.S.C. § 1129(a)(7).*

8.      The Certificate of Vote attached as Exhibit A hereto discloses those classes that have accepted the plan, those classes that have rejected the plan, those classes which are not impaired under the plan, and those classes which have rejected but are being treated (if applicable) by plan treatment permitted under sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  *See 11 U.S.C. § 1129(a)(8).*

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, being the Unclassified Administrative Claims Class, on the Effective Date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim. *See 11 U.S.C. § 1129(a)(9)(A).*

10.      With respect to a class of claims of a kind specified in section 507(a)(3), being **Class or Classes N/A**, 507(a)(4), 507(a)(5), 507(a)(6) and 507(a)(7) of the Bankruptcy Code, each holder of a claim of such class will receive, if such class has accepted the plan, deferred cash payments of a value, as of the Effective Date of the

plan, equal to the allowed amount of such claim.  Or, if such class has not accepted the plan, cash on the Effective Date of the plan equal to the allowed amount of such claim. *See 11 U.S.C. § 1129(a)(9)(B).*

11.    With respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, being **Class or Classes N/A**, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the Effective Date of the plan, equal to the allowed amount of such claim.  *See 11 U.S.C. § 1129(a)(9)(C).*

12.    If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan, being **Classes 1 and 3**, have accepted the plan, determined without including any acceptance of the plan by an insider.  *See 11 U.S.C. § 1129(a)(10).*

13.    Confirmation of this plan is not likely to be followed by liquidation, or the need for further financial reorganization, of this debtor or any successor to the debtor under the plan, unless liquidation or reorganization is proposed in the plan.  *See 11 U.S.C. § 1129(a)(11).*

14.    All fees due and all quarterly fees payable to the United States Trustee have been paid as of the confirmation date **or will be paid on the Effective Date from the Cash Confirmation Deposit**.

15.    The plan provides (if applicable) for the continuation after its effective date of payment of any retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to section 1114(e)(1)(B) or (g) of the Bankruptcy Code, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.  *See 11 U.S.C. § 1129(a)(13).*

16.    The plan is hereby determined to be fair and equitable and does not discriminate unfairly with regard to any class of claims or interests that is impaired under, and has not accepted, the plan.  *See 11 U.S.C. § 1129(b)(1).*

17.    The plan is fair and equitable with respect to any rejecting class of secured claims (if applicable) and the plan provides that holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and that each holder of a claim of such class will receive on account of such claim deferred

3

cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interests in the estate's interest in such property.  *See 11 U.S.C. § 1129(b)(2)(A)(i).*

18.    **Special Provisions Pertaining to Plan Proponents:**

A.    The Plan Proponents are found, and shall be deemed for all purposes to have assigned their privileges and rights and duties, financial liabilities and other obligations under the Plan to Shepherd's Hill Proponent Group, LLC (the "New Member").

B.    The New Member is, and shall continue to be a New Hampshire limited liability company of which Caesar Balzotti, Ralph Caruso and Ernest Thibeault are, and shall continue to be the Members subject to the provisions of the Plan governing the sale, assignment, transfer or other disposition of their interests.  On Final Confirmation, the Proponents shall have no further financial liabilities or other obligations under the terms of the Plan, except as specifically preserved by the Plan or provided in this Order.  Nothing contained in this Order shall release, or be deemed to release any of the Proponents or their affiliates of, or from any of their financial liabilities and other obligations under the terms of the Incorporated Documents.

19.    **Special Provisions Pertaining to Allowed Secured Claims:**

A.    The provisions of the Plan requiring the payment of interest to the Class 2-A and 2-B Creditors pending the closing of the first 50 Sites shall be deemed to have been deleted in their entirety.

B.    Ernest Thibeault or Thibeault Corporation or another nominee,  (the "Assignee" or "Thibeault") shall purchase the Allowed Secured Claims held by Leonard Vigeant for the sum of $3,075,000.00 (the "Assignment Price") which represents approximately 86% of the Allowed Secured Claim, subject to Final Confirmation and the following terms and conditions.  If a nominee other than Thibeault Corporation shall be the Assignee, Thibeault shall remain obligated under this paragraph.

C.    Vigeant shall cancel the foreclosure sale of the Debtor's Development Property scheduled for July 27, 2000 as required by the confirmation of the Plan.

D.    On or before July 21, 2000, Thibeault shall deposit the sum of $300,000.00 with Jack S. White, Esq. (the "Escrow Funds" and "Escrow Agent") in escrow for application to the Assignment Price or refund as appropriate.  The deposit

4

shall be non-refundable following Final Confirmation.  Within 10 days thereafter, Vigeant shall execute and deliver in escrow to the Escrow Agent an Assignment of the Promissory Note, Mortgage Deed and each of the other Vigeant Loan Documents, as such term is used in the Plan, in such form as may be reasonably required by Edward A. Jordan, Esq., but shall include representations and warranties that (i) Vigeant is the owner and holder of each of such Loan Documents, (ii) he has good right and lawful authority to sell, assign and set over to the Assignee such Loan Documents and that such Loan Documents have not been amended, modified or changed in any material respect except as a result of this Order, (iii) such Loan Documents evidence and secure the repayment of the Allowed Secured Claim, as determined by this Court, and (iv) are valid and enforceable in accordance with their terms and conditions, except as modified by this Order.  On Final Confirmation, the Escrow Agent may, and is hereby authorized to disburse the Escrow Funds to Vigeant.  The Escrow Agent shall deliver the Assignment to the Assignee simultaneously with the payment of the balance of the Assignment Price. If the Confirmation Order entered by this Court shall not become final or Vigeant shall breach any of the required representations or warranties in any material respect, the deposit shall be refunded to the Assignee.

      E.    Within 10 days of receipt, the Escrow Agent shall deposit the Escrow Funds in an interest bearing account in the name of the Assignee.  All interest earned on the deposit shall remain the property of the Assignee and be paid over to the Assignee or applied to the Assignment Price in the absence of any default by the Assignee.  If the Assignee fails to pay the balance of the Assignment Price, the interest may be retained by Vigeant.

      F.    On or before the 90th day from July 20, 2000, i.e. October 19, 2000 (the "Payment Date"), the Assignee shall pay Vigeant the balance of the Assignment Price.

      G.    No interest shall accrue or be payable to Vigeant during the period between the date of this Order and the Payment Date except in the event of the default by Assignee.

      H.    In the event that the Assignee shall not pay the balance of the Assignment Price, Vigeant may proceed to foreclose his Mortgage Deed in conformity with New Hampshire law and the terms of the Loan Documents subject to the following provisions:

(1)      No further contractual notice of default required by the Loan Documents need be given;

(2)      Without further Order of this Court, a foreclosure may be scheduled for November 30, 2000 or earlier in the event that Thibeault Corporation does not comply with, and satisfy its obligations under this Order with respect to the construction of the Loop Road and related infrastructure in any material and substantial respect;

(3)      Subject to commercially reasonable advertising and marketing and the retention of a qualified auctioneer to conduct the sale process and sale itself, a foreclosure sale on or after November 30, 2000 shall comply with, and satisfy the contractual and legal standards governing the length of notice required by New Hampshire law; and

(4)      Interest on the conditionally assigned Vigeant Note and Mortgage shall accrue at the rate of 14% from and after the Effective Date.

I.      Time is of the essence as to all dates.

J.      The Trustee, Reorganized Debtor, Plan Proponents, Assignee and Vigeant will exchange mutual general releases after the settlement has been fully effectuated.  Excluded from the Trustee's release shall be any claim or causes of action against Caesar Balzotti or objections to any claim asserted by him.

20.      The Assignee shall purchase the Allowed Secured Claim held by Combat Corporation on the same terms and conditions as those pertaining to the purchase of the Vigeant Allowed Secured Claim, modified as appropriate to reflect the fact that the Combat Allowed Secured Claim is $91,966.20 and that David K. Pinsonneault shall be the Escrow Agent.  Combat shall retain its Class 3 Unsecured Claim which will be treated in accordance with the Plan.  Combat will not have to provide releases pursuant to paragraph 19.J nor put the deposit in an interest bearing account per paragraph 19.E.

**21.      Special Provisions Pertaining to Development Permits:**

A.      The provisions set forth in Exhibit B captioned "Provisions Relating to Development Permits" are incorporated herein by reference.

**22.      Special Provisions Pertaining to Classes 2-A and 2-B:**

A.      With respect to Class 2-A, the Class Interest Rate shall be 10%.

B.      With respect to Class 2-B, the Class Interest Rate shall be 6.95%. Notwithstanding the text of the Plan, the Reorganized Debtor shall pay Combat an

6

amount equal to the interest which has accrued at the Class Interest Rate monthly beginning on the 30th day following the Effective Date and on the same date of each month thereafter until the Allowed Claim has been paid in full.

23. **Special Provisions Regarding Implementation:**

A.      On or before July 25, 2000, Edward A. Jordan, Esq. shall pay over to the Trustee the $100,000.00 in collected funds being held in escrow by him.  As soon as Jordan has collected the $200,000 paid to him at the commencement of the confirmation hearing, he shall remit the funds to the Trustee.

B.      On or before the Effective Date, each and every necessary party shall execute the Incorporated Documents, as such term is defined in the Plan.

C.      The Reorganized Debtor shall be in default under the Plan if:

(1)      Thibeault Corporation of New England does not begin constructing the Loop Road and related infrastructure pursuant to the Infrastructure Contract on or before August 15, 2000 and substantially complete it on or before December 31, 2000, weather permitting.  The process of constructing the Loop Road and related infrastructure includes, and shall be deemed to include, the following essential, pre-construction work; layout, engineering, pre-construction meetings with the Town of Hudson and setting up the road account escrow with the Town of Hudson.  The term "substantially complete" means that the road and infrastructure shall have been completed except for (i) the application of a base coat of asphalt if weather should not permit, and (ii) the application of the final coat of asphalt.  If the Assignee shall purchase the Vigeant Loan Documents on or before October 19, 2000, the term "substantially complete" shall mean the completion of the majority of the earthwork.  Weather permitting the Loop Road and related infrastructure shall be completed by April 30, 2001.

D.  If any party in interest should appeal from this Confirmation Order, the period of time provided for the doing of any act or the payment of any money shall be automatically extended for a period coterminous with such appellate proceeding.

24. **Special Provisions Regarding Taxation:**

A.      Any conveyances of real estate located in the Debtor's Development Property, as such term is used in the plan, made by the Reorganized Debtor shall be deemed to have been made pursuant to the plan and shall be exempt from the Transfer Tax imposed on transfers of New Hampshire Real Estate under Section 1146(c) of the Bankruptcy Code.

7

25.     **Special Provisions Regarding Insiders:**

A.      None of the following persons who are allegedly insiders with respect to the Debtor shall be paid for any work done in connection with the development of the Project until such time as all Class 3 Creditors have been paid in full:  Anthony Balzotti, Caesar Balzotti, Dawn Balzotti, Michael Balzotti, as individuals, and Platinum Construction.

B.      Dritt may move to intervene as a party plaintiff in the pending RAD Litigation.  Dritt will continue to be represented by Orr & Reno if she intervenes in the RAD Litigation which shall be responsible for representing her interests.  Subject to reaching a satisfactory agreement regarding fees, the sharing of costs and means for resolving any disputes regarding the acceptance or rejection of any compromise or settlement, Dritt will be treated as if she were one of the plaintiffs represented by Wadleigh, Starr & Peters, PLLC.

26.     Except for the competing Plan of Reorganization filed by the Trustee, which has been withdrawn, there are no other plans that have been proposed in this case.

27.     The plan is hereby confirmed.

28.     The provisions of the plan are hereby made binding upon the debtor and any creditor or equity security holder of the debtor whether the claim or interest of such creditor or equity security holder is impaired under the plan and whether such creditor or equity security holder has accepted the plan.

29.     Except as otherwise provided herein or in the plan, and effective as of the Effective Date of the plan, in accordance with section 1141(d) of the Code, the debtor is hereby discharged of and from any and all debts and claims that arose against it before the date of entry of this order, including, without limitation, any debt or claim or a kind specified in sections 502(g), 502(h) or 502(i) of the Code, whether or not (i) a proof of claim based on such debt is filed or deemed filed under section 501 of the Code, (ii) such claim is allowed under section 502 of the Bankruptcy Code, or (iii) the holder of such claim has accepted the plan.

30.     Except as otherwise provided herein or in the plan, and effective as of the Effective Date of the plan, in accordance with sections 1141(b) and 1141(c) of the Code, all property of the debtors' estate and all property dealt with by the plan is hereby vested in the debtor free and clear of all claims and interest of creditors and equity security

holders of the debtor.

31.     Except as provided in the plan, and subject only to the occurrence of the Effective Date of the plan, any judgment at any time obtained, to the extent that such judgment is determination of the liability of the debtor with respect to any debt or claim discharged hereunder, is hereby rendered null and void.

32.     Effective as of the Effective Date of the plan, the commencement or continuation of any action, the employment of process of any act to collect, recover or offset any claim discharged or interest terminated hereunder is hereby permanently enjoined, stayed and restrained.

33.     The debtor shall have the right to make objections to any claims or interests, unless prohibited by the plan, by filing with the Court and serving a copy of each such objection and a notice of hearing on such objection upon the holder of such claim or interest no later than **August 31, 2000**.

34.     Any claim for damages arising from the rejection of any executory contract or unexpired lease pursuant to the plan shall be forever barred unless a proof of claim therefor in proper form is filed with the Court within thirty (30) days after the later of the date of entry of (i) an order by the Court approving the rejection of such executory contract or unexpired lease or (ii) this order.

35.     All applications or requests for compensation or the reimbursement of any expenses or costs by any professionals retained with Court approval in this Chapter 11 case, or fees and expenses by any party in interest must be filed with the Court, with a copy thereof served on counsel for the debtor and the U.S. Trustee on or before **August 31, 2000**.

36.     On or before a date that is two (2) business days after the date of entry of this order, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the debtor shall mail to all known holders of claims and interests, notice of the entry of this order and shall serve a copy of this order upon the United States Trustee and all parties entitled to notice pursuant to the Bankruptcy Code.  Service of such notice and this order shall be sufficient and complete notice of all matters addressed in this order, including all bar dates set forth herein for the filing of claims, applications and requests for payment and objections, and no further notice with regard to any such matters shall be required.

37.     In accordance with the provisions of LBR 3020-1, the Court shall retain exclusive jurisdiction for the following purposes:

(a) To hear and determine objections to claims;

(b) To hear and determine any dispute arising under the plan, its implementation and execution of any necessary documents thereunder and any requests to amend, modify or correct the plan, provided such matters are brought before the Court prior to the point of substantial consummation;

(c) To grant extension of any deadlines set forth in this order as may be appropriate, except that no extension for any reason shall be granted to Assignee and/or the Reorganized Debtor as to the date (October 19, 2000) payment is due Vigeant.

(d) To enforce all discharge provisions under the plan; and

(e) To consider and rule upon requests for final compensation.

In addition, until entry of a final decree, the Court shall retain exclusive jurisdiction to hear and determine any dispute arising under paragraphs 19, 20 or 23 of this Order.

The debtor shall be permitted to file a motion requesting additional retention of jurisdiction for specific matters within sixty (60) days of the date of this order.  Any such further retention of jurisdiction granted by the Court shall be provided for in a supplementary order on such motion.

38. The debtor shall file an application for final decree pursuant to the provisions of Bankruptcy Rule 3022 and LBR 3020-1 within 120 days from the date of this Order.

39. The provisions of Section 1141 are incorporated herein by reference, including those staying or enjoining Vigeant from completing or taking any further action with respect to the foreclosure sale scheduled for July 27, 2000 other than canceling it except as shall be otherwise permitted by the paragraph of this Order captioned "Special Provisions Pertaining to Allowed Secured Claims".

40.     For good cause shown, including the consent of all of the parties in interest who participated in the confirmation hearing and the imminency of Leonard Vigeant's foreclosure sale, this Order shall become effective on July 21, 2000 as permitted by  Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, notwithstanding the ten-day stay which would otherwise be imposed by such Rule.

DONE and ORDERED this 21st day of July, 2000 at Manchester, New Hampshire.

BY THE COURT:

J. Michael Deasy, Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT
for the
DISTRICT OF NEW HAMPSHIRE

In re:

SHEPHERDS HILL DEVELOPMENT CO., LLC

          Debtor

CHAPTER 11
Case No. BK-99-11087-JMD

## CERTIFICATE OF VOTE

Caesar Balzotti, Ralph Caruso and Ernest Thibeault, the proponents of Proponent's Third Amended Plan of Reorganization Dated July 5 , 2000 (collectively, the "Proponent" and the "Plan"), hereby certify that:

1.    **Unimpaired Classes.**  Under the terms of the Plan, all Classes are impaired.

2.    **Voting by Impaired Creditor Classes.**  Attached as Exhibit A is Shepherds Hill Voting Summary which provides the following information by Class:  (i) the name of the Class, (ii) the number of Class Members which voted to accept or reject the Plan, (iii) the percentage by number of Class Members which voted to accept and reject the Plan, (iv) the dollar amount of Claims asserted by Class Members voting to accept or reject the Plan, and (v) the percentage by dollar amount of the Claims asserted by Class Members which voted to accept or reject the Plan.  For the purposes of this Certificate, the Voting Summary is incorporated by reference as fully as if set forth at length herein.

3.    **Voting Summary by Class.**

    A.    The following Classes have accepted the Plan:

        (1)    Class 1 - Real Estate Tax Claim Class
        (2)    Class 3 - Senior Unsecured Claims Class [1]
        (3)    Class 4 - Junior Unsecured Claims Class

---

[1] This assumes that Dritt's rejection is designated and disqualified or that she is permitted to vote to accept the Plan based on the Plan modifications made by the Proponent at her request.

    (4)     Class 5 - Subordinate Claim Class
    (5)     Class 6 - Equity Interest Holders Class

B.     Creditors in the following Classes rejected the Plan by voting against it.

    (1)     Class 2-A - Vigeant Secured Claim Class
    (2)     Class 2-B - Combat Secured Claim Class

C.     Creditors in the following Classes did not cast any ballots with the result that such Classes did not accept the Plan:

    (1)     None

D.     Total number of Classes:  7

Respectfully submitted,

DATED: July 17, 2000

William S. Gannon

Attorney for:

CAESAR BALZOTTI.

WADLEIGH, STARR & PETERS, PLLC
95 Market Street
Manchester NH  03101
PH: 603-669-4140

DATED: July 17, 2000

Edward A. Jordan

Attorney for:

RALPH CARUSO
ERNEST THIBEAULT

JORDAN, MAYNARD & PARODI, PLLC
40 East Pearl Street
Nashua NH    03060
(603) 881-5800

SHEPHERDS HILL VOTING SUMMARY @ 7/17/00

| CLASS | | NUMBER VOTING | %AGE | DOLLAR AMOUNT | %AGE |
|---|---|---|---|---|---|
| Real Estate Tax Claim | Accept | 1 | 100.00% | $175,000.00 | 100.00% |
| | Reject | 0 | 0.00% | $0.00 | 0.00% |
| | Total | 1 | 100.00% | $175,000.00 | 100.00% |
| | | | | | |
| Secured Class Claim 2-A | Accept | 0 | 0.00% | $0.00 | 0.00% |
| Vigeant | Reject | 1 | 100.00% | $3,452,731.00 | 100.00% |
| | Total | 1 | 100.00% | $3,452,731.00 | 100.00% |
| | | | | | |
| Secured Class Claim 2-B | Accept | 0 | 0.00% | $0.00 | 0.00% |
| Combat | Reject | 1 | 100.00% | $92,000.00 | 100.00% |
| | Total | 1 | 100.00% | $92,000.00 | 100.00% |
| | | | | | |
| Senior Unsecured Claims | Accept | 12 | 100.00% | $1,153,208.75 | 100.00% |
| | Reject | 0 | 0.00% | $0.00 | 0.00% |
| | Total | 12 | 100.00% | $1,153,208.75 | 100.00% |
| | | | | | |
| Junior Unsecured Claims | Accept | 2 | 100.00% | $1,015,767.00 | 100.00% |
| | Reject | 0 | 0.00% | $0.00 | 0.00% |
| | Total | 2 | 100.00% | $1,015,767.00 | 100.00% |
| | | | | | |
| Subordinate Claim | Accept | 1 | 100.00% | $1,944,717.00 | 100.00% |
| | Reject | 0 | 0.00% | $0.00 | 0.00% |
| | Total | 1 | 100.00% | $1,944,717.00 | 100.00% |
| | | | | | |
| Equity Interest Holders | Accept | 5 | 100.00% | $0.00 | 100.00% |
| | Reject | 0 | 0.00% | $0.00 | 0.00% |
| | Total | 5 | 100.00% | $0.00 | 100.00% |

VISIONS RELATING TO DEVELOPMEN. PERMITS

EXHIBIT
B
tabbies

# UNITED STATES BANKRUPTCY COURT

## DISTRICT FOR NEW HAMPSHIRE

**In re:  Shepherds Hill Development Company, LLC**
**Debtor**

### Case #:  BK-99-11087-JMD

1.        A final Confirmation Order shall contain provisions determining, finding and ruling with respect to the right to develop the property more fully described and identified as Shepherd's Hill, Kimball Hill Road, Hudson, New Hampshire, Tax Map 5 Lot 214.   Said plan being recorded at the Hillsborough County Registry of Deeds as Plan No. 28218 (hereinafter "the property").

2.        That the property was the beneficiary of a variance awarded by the Hudson Zoning Board of Adjustment on July 11, 1985 granting permission to construct a multi-family residential use project containing no more than 400 dwelling units (hereinafter "the variance").

3.        That the variance was the subject of litigation heard at the Hillsborough County Superior Court South in a matter entitled <u>Leonard Vigeant v. Town of Hudson</u>, Docket No.: 94-E-001.  In a decision dated January 18, 1995, the Court found and ruled that the variance allowing the multi-family density and use respecting the property was still valid.  All parties agree that this means that the property was allowed to be developed for the purpose of constructing no more than 400 dwelling units (hereinafter referred to as "Order of the Court").

4.        That a plan for the development of the property in conformance with the variance and Order of the Court, was approved by the Hudson Planning Board on August 28, 1996, signature date on plan, October 7, 1996.  Said plan being recorded at the Hillsborough County Registry of Deeds as Plan No. 28218 (hereinafter "approved plan").  That plan contained 55 separate notes as set forth in Drawing 2 of the plan and was further subject to a development agreement between the Town of Hudson and Leonard Vigeant (hereinafter "Vigeant") dated October 7, 1996.  Said development agreement was recorded at the Hillsborough County Registry of Deeds on October 8,

1996, Book 5758, Page 667.  The plan was further subject to an amendment to the development agreement dated June 13, 1997 between Vigeant and the Town of Hudson and recorded at the Hillsborough County Registry of Deeds at Book 5823, Page 606.

5.	That the present or future owner of the property has the right to construct, develop and otherwise maintain the property pursuant to the terms of the variance and Order of the Superior Court, and in conformance with the approved plan, subject to all of the notes on the approved plan and the development agreement and amendment to development agreement for such period of time as described herein.  That pursuant to the terms of the recent Order of the Court on the question of tolling, the property has the right to be maintained and constructed according to the terms of the approved plan up to February 8, 2002.  Accordingly, and notwithstanding the provisions of New Hampshire RSA 674:39 or any other common law doctrine which would deem an approved plan that has not built or constructed according to its terms within a stated period of time void or voidable, that the approved plan, as permitted pursuant to the variance and Order of the Court, shall be entitled to be developed and maintained as a multi-family residential project for up to 400 dwelling units for such period of time up to February 8, 2002.

6.	The rights that attach to the variance, Order of the Court and the approved plan include the right to be granted such municipal sewer allocation as is necessary to maintain the premises for up to 400 dwelling units.  Notwithstanding the fact that the Town of Hudson has recently adopted amendments to its Sewer Ordinance which limits the availability of sewer to a defined amount of flow per dwelling unit, the rights that attached to the property through the variance, Order and approved plan include the right to obtain such sewer flow from the Town of Hudson as is necessary to maintain the premises for up to 400 residential dwelling units.  Provided, further, however, that a Sewer Capital Assessment Fee must be paid at the time of issuance of a building permit for any such dwelling unit.  The Town of Hudson shall charge a Sewer Capital Assessment fee in the amount of $1,550 per dwelling unit.  The present or future property owner reserves the right to investigate the history of payment of fees and

2

expenses for sewer connection to the project in order to ascertain whether the correct amount of Sewer Capital Assessment Fee is being charged by the Town of Hudson

7.     That the rights to maintain, develop and use the property as granted and permitted by the terms of the variance, Order and approved plan will be subject to the following additional terms and conditions which are hereby imposed and are binding on the present and future property owner:

      A.     That the rights that attach to the variance, Order and approved plan will only exist and continue  until no later than December 31, 2002. Provided however, that if the present or future property owner is able to make substantial completion of the project on or before December 31, 2002, then the rights to maintain and use the property as derived from the variance, Order of the Superior Court and/or the approved plan shall be fully, absolutely and permanently vested and under no circumstances shall those rights be lost or deemed void or voidable in any way by any subsequent Zoning Ordinance amendment, regulation, rule or statute adopted by the Town of Hudson or other appropriate land use agencies.  For the purpose of this paragraph, substantial completion necessary to achieve absolute and permanent vesting from subsequent changes in land use or other regulations shall only be achieved if the present or future property owner completes to the satisfaction of the Town of Hudson the construction of the infrastructure of the Project consisting of the installation of drainage, utilities, and roadways being the loop road, so called, completion of all finger roads in phases necessary for the 100 units as defined below, and any remaining offsite improvements and at least 100 units.  In addition, for the 100 units that must be so completed, the on site parking lots, community buildings, maintenance buildings, tot lots servicing those units shall be completed as well as the payment of all required impact fees due and owing to the Town of Hudson as set forth in ¶6 and ¶7C.   In order to achieve substantial completion

3

with regards to the 100 units described herein, the work on all such units shall have at a minimum reached the stage of having passed the stage of construction inspection, as administered by the Town of Hudson for insulation installation.

B.  Notwithstanding the terms of the prior variance, Order of the Superior Court and the terms and conditions of the approved plan, the present or future property owner agrees and shall be bound by a Phasing Agreement incorporated herein and to be recorded at the Hillsborough County Registry of Deeds.  Said Phasing Agreement shall provide that the present or future property owner shall not be permitted to obtain more than 100 certificates of occupancy per calendar year for dwelling units at the property.  It is the express understanding of this paragraph that notwithstanding whether or not multiple dwelling units are located within individual structures, under no circumstances shall more than 100 dwelling units be issued certificates of occupancy per calendar year at the property.  Provided, however, if in the year 2000 less than 100 certificates of occupancy are issued, then the unissued amount from 2000 may be carried over and be issued in the year 2001, so long as the total number of certificates of occupancy issued in the year 2001 shall not exceed 175.  Provided, further, if in the year 2002 the total number of certificates of occupancy issued in the years 2000 and 2001 combined is less than 200, then the unissued amount may be carried over and be issued in the year 2002, so long as the total amount issued in the year 2002 does not exceed 125.  It is expressly understood and agreed that these permits cannot otherwise be accumulated in any way whatsoever and under no circumstances will the Town of Hudson be required to issue more than 100 certificates of occupancy  per calendar year, other than as stated in this paragraph.

C. Notwithstanding the terms and conditions of the variance, Order of the Superior Court or the terms and conditions of the plan and attached development agreement, the present or future owner of the property shall pay to the Town of Hudson such impact fees as follows.  For those units that are issued certificates of occupancy on or before February 8, 2002, an impact fee of $600.00 per unit shall be paid to the Town of Hudson.  For those units that are issued certificates of occupancy on or after February 9, 2002, an impact fee of $1,200 per unit shall be paid to the Town of Hudson, or the amount payable under then existing impact fee schedules, whichever is the lesser.  For the purposes of this subparagraph the term "impact fee" shall mean School Impact Fee, Public Library Impact Fee and Road CAP Fee.  As used in this subparagraph, the term "impact fee" shall not refer to the Sewer Capital Assessment Fees described in ¶6 of this agreement.

D. The present or future owner of the property shall make a contribution towards the park on the Benson's piece in the amount of $375.00 per unit payable at the sale of such unit.

8. That the rights to maintain, use and develop the property as permitted and granted pursuant to the terms of the variance, Order of the Superior Court and the approved plan, as modified by the provisions of  ¶7 herein, shall continue for such a period of time as described herein up to December 31, 2002.  Provided however, if substantial completion of the project is not achieved as described in ¶7 C herein on or before December 31, 2002, then the property and the rights to develop the property shall then be subject to the then existing terms and conditions of the Town of Hudson Zoning Ordinance, Site Plan Review Regulations and any other local regulations, including building regulations that may pertain to the use and development of the property.  In the event of failure to complete substantial improvements on or before December 31, 2002 that under those circumstances the property would then have to comply with the then existing dwelling unit density requirements, wetland regulations, flood zone regulations, and any other building and land use regulations that would

5

pertain to the property.  The parties recognize that in that eventuality the property would not be allowed to legally support 400 dwelling units and in all likelihood the number of dwelling units would be drastically reduced from the presently allowed 400 dwelling units as permitted by the terms and conditions of the variance, Order of the Superior Court and the plan.  The parties recognize that the date of substantial completion as defined herein of December 31, 2002 shall result in either irrevocable vesting of the right to the project to be maintained for 400 dwelling units or the irrevocable loss of that right so that the property thereafter can only be used and maintained in full conformance with then existing zoning and land use regulations of the Town including but not limited to the then existing sewer ordinance of the Town which may limit the availability of sewer, density and wetland regulations.  The parties recognize that all prior rights that have been defined by the existence of the variance, Order of the Superior Court and approved plan shall there and on that date, when failure to make substantial completion has not been achieved, expire and be extinguished.

9.    Further, notwithstanding the rights attached to the plan, variance, Order of the Superior Court and approved plan, notwithstanding the fact that Note 20 on the approved plan indicates that there will be a 15 foot separation between all buildings, all buildings shall be separated by a minimum of 20 feet as currently required by the terms and conditions of the Town of Hudson's Fire Code and Life Safety Regulations as presently enforced by the Town of Hudson Fire Department.  In addition, in order to satisfy the current requirements and recommendations of the Hudson Fire Department, all on-site roads within the project shall be designed and built to address all other life safety concerns, including but not limited to the adequacy of turning radii in order to accommodate emergency vehicles and the length and dimension of roads and cul-de-sacs.  Provided, however, should these Town of Hudson Fire Department requirements cause a decrease in the number of units, or would cause a change in the design of the loop road, so called, then under those circumstances the project shall only be required to meet such Fire Dept. standards as reasonably possible using best engineering practices.  Under no circumstances should these provisions cause a decrease in the number of units below 400 units.

10. Further, notwithstanding the terms and conditions as set forth herein, and notwithstanding the rights that attach to the property by virtue of the variance, Order of the Superior Court and approved plan, the present or future property owner shall be obligated to obtain and fully abide by the terms and conditions of any other necessary permits to include but not limited to alteration of terrain permit, wetlands permits, or any other permits required from the New Hampshire Department of Environmental Services, the Environmental Protection Agency and any other agency having jurisdiction over a land use project of this sort.

11. Furthermore, notwithstanding the foregoing, and notwithstanding the rights attached to the variance, Order of the Superior Court and plan, the present or future property owner, when carrying out construction on the property, shall pay for the cost of the Town of Hudson engaging a suitable construction inspection engineer to verify compliance with the terms and conditions of the approved plan and permits issued by the New Hampshire Department of Environmental Services or agencies having jurisdiction. This will require the present or future property owner setting up an adequate engineering escrow account to pay for the cost of the Town's consulting engineer and the amount of that account will be set after mutual consultation between the present or future property owner and the Town of Hudson by and through the Hudson Planning Board or Planning Department.

12. At the sole option of the present or future property owner, a modified plan including single family triplex units along with the original 148 townhouse units may be proposed to the Town of Hudson. In that event, the Hudson Planning Board would have jurisdiction to consider approval of said modified plan which will be treated by the Town of Hudson Planning Board as a new application for subdivision approval. That such modified plan would be presented to the Board recognizing that the Board shall be obligated to grant approval for up to 400 dwelling units. Other than being required to approve a plan that at a minimum permits construction of 400 dwelling units, the Planning Board shall have the discretion to impose terms of conditions of approval that are the same as those imposed on the plan in 1996, and the accompanying development agreements, or impose new and different terms and conditions of approval that do not lessen the construction as contemplated under the prior approved plan. As

7

a general statement of policy, any modified plan is to be considered by the Board in light of the previous approval of the plan for Shepherd's Hill, HCRD #28218 and all of the terms and conditions of that approval including the 55 notes on the plan and the original development agreement and modified development agreement and all attachments thereto.  However, the Board would not be bound to reimpose all of the same terms and conditions, but at its sole option could do so, as well as impose new terms and conditions so long as  400 dwelling units would be permitted by any modified plan.  Any such modified plan would be subject to all of the terms and conditions of this agreement, including ¶5 (number of allowed units), ¶6 (sewer allocation), ¶7 (time limit, phasing, impact fees, Benson Park contribution), ¶8 (loss of vesting), ¶9 (building separation), ¶10 (other permits) and ¶11 (construction inspection fees).