UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>**SHEPHERDS HILL DEVELOPMENT CO. LLC,**<br><br>Debtor. | Chapter 11<br>Case No. 99-11087 (MAF) |

## MOTION FOR DETERMINATION

Shepherds Hill Homeowners Association, Inc. (the "Association") an interested party in the chapter 11 case of Shepherds Hill Development Co., LLC (the "Debtor"), hereby moves this Court for an order determining that the Debtor's obligations pursuant to the Plan (defined below) have been satisfied with respect to payments due to Edmond J. Ford, as Disbursing Agent ("Disbursing Agent") on behalf of the Senior Unsecured Creditor Class[1] in the development of the property known as Shepherds Hill Condominium, 22 Kimball Hill Road, Hudson NH (the "Property"). In support of the motion, the Association asserts the following:

### JURISDICTION, VENUE, AND STATUTORY BASIS

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The bases for relief are Sections 105 and 1109(b) of the Bankruptcy Code, Bankruptcy Rule 9014.

### BACKGROUND

3.  On April 2, 1999 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court").

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings attributed to them in the Plan.

4. In or about February 22, 2000, Edmond J. Ford was appointed as Trustee ("Trustee") of the Debtor by the United States Trustee, First Circuit. The Trustee retained counsel to assist with the administration of the case.

5. On or about March 29, 2000, the Trustee filed a plan of reorganization (the "Trustee Plan") and disclosure statement ("Disclosure Statement"). The Trustee Plan and Disclosure Statement were amended several times.

6. On or about May 2, 2000, a competing plan (the "Plan") was filed by creditors Ralph Caruso, Caesar Balzotti and Ernest Thibeault. This plan was subsequently amended.

7. After several amendments and objections, the Plan was confirmed by order of the Court on July 21, 2000 (the "Confirmation Order"). Upon confirmation, the Trustee became the "Disbursing Agent" for the benefit of the Class 3 Creditors (Senior Unsecured Creditors).

8. The Plan contemplated that the Reorganized Debtor, in connection with the Plan Proponents[2], were to develop the Property by building additional condominium units and selling those units. The Plan provided that distributions to creditors asserting claims against the Debtor's estate would be funded through the sale of such units at the rate of $20,000 per unit (the "Plan Obligations").

9. After confirmation of the Plan, the Property was transferred to the Association pursuant to a Declaration of Condominium and did so on February 18, 2003. That Declaration of Condominium was recorded with the Registry of Deeds on February 25, 2003.

10. The Debtor/Reorganized Debtor retained among other things, the right to develop an additional 400 condominium units utilizing "convertible land" conveyed to the Association (the "Development Right"). The Development Right was effective for a period of five (5) years with the ability to extend for up to another five (5) years for a maximum of ten (10) years by statute.

11. Between February 2003 and July 2009, 274 units of the potential 400 units had been

---

[2] The Shepherds Hill Proponents, LLC entity was created in connection with the Plan and the members were Caesar Balzotti, Sr., Ralph Caruso, and Ernest J. Thibeault, III.

2

built.  Upon information and belief, no additional units were built after that date.

12. The Distributing Agent received Distributable Proceeds during that period of development, however, the distributions were not sufficient to pay the Class 3 Senior Unsecured Creditors claims in full.

13. In August 2010, Balzotti, through his wife, brought involuntary bankruptcy proceedings against the Reorganized Debtor, the Proponents, and Thibeault (the bankruptcy defendants).  In September 2010, the Court dismissed the proceedings without prejudice on the ground that, as filed, they did not comply with the bankruptcy code. The Court found that the proceedings had been brought in bad faith and ordered Balzotti to pay attorney's fees and punitive damages.

14. In an attempt to salvage the Development Right prior to its expiration, the Reorganized Debtor recorded a "Twenty-Fourth Amendment" to the Declaration of Condominium on February 22, 2013, in an attempt to create land only units of the undeveloped common area.

15. The Association subsequently brought a complaint in the New Hampshire Superior Court (Rockingham County) (the "Superior Court") for declaratory and injunctive relief against the Reorganized Debtor seeking, among other things, a declaration that the Twenty-Fourth Amendment was void and unenforceable.

16. On March 18, 2014, the Superior Court ruled in favor of the Association. In addition to voiding the Twenty-Fourth Amendment, the court ruled that the Reorganized Debtor's Development Right expired by operation of statute, and that the undeveloped common land belonged to the condominium unit owners, subject to the control of the Association. See RSA 356-B:23, III.

17. The Superior Court decision was appealed, and on April 2, 2015, the New Hampshire Supreme Court ("NH Supreme Court") affirmed the Superior Court decision.

18. On February 2, 2018, Balzotti filed a complaint in the Superior Court against the Reorganized Debtor and related parties.  The Association intervened as a party-defendant.

19. In the 2018 action, Balzotti sought to collect on a promissory note originally issued by

the Reorganized Debtor to Dawn Balzotti, who purportedly assigned the note to Balzotti in 2014.

20. The Superior Court issued an opinion on October 31, 2018, dismissing Balzotti's claim as time-barred under the applicable New Hampshire statute of limitations. Balzotti Global Group, LLC v. Shepherds Hill Development Corp. 2018 WL 9440707 (2018). The Superior Court re-affirmed and found, among other things, that the Development Right once held by the Reorganized Debtor was lost by operation of statute.

21. That opinion was appealed, argued on March 4, 2020, and decided by the NH Supreme Court on May 27, 2020. The NH Supreme Court affirmed the Superior Court's decision and provided a substantive timeline of events dating back before the original bankruptcy proceeding was filed. See Balzotti Global Group, LLC v. Shepherds Hill Proponents, LLC, 173 N.H. 314 (2020).

22. Of note in the NH Supreme Court opinion, the Court casts doubt on Balzotti's argument that the Association is the successor to the Reorganized Debtor with regard to the obligations under the Plan. Balzotti 173 N.H. at 324 ("the plaintiffs fail to explain how the Association could possibly become the successor to the [Reorganized Debtor's] obligations to pay the Note under the bankruptcy plan."). The Court does state that the argument is insufficiently developed for review, meaning that Balzotti effectively waived the right to raise that issue on appeal.

*The Plan Terms*

23. The Plan confirmed by the Court on July 21, 2000, set the table for the course of conduct between the Reorganized Debtor and the creditors of the Debtor, by and through the Disbursing Agent. In each instance where a Plan Obligation is referenced in the Plan regarding payments due under the terms of the Plan, the obligation is of the Reorganized Debtor.

24. Beginning with the definition section of the Plan, "Distributable Proceeds" is defined as "$20,000 from each sale of an unimproved site by the *Reorganized Debtor*" and "$20,000 from each Loan made to the *Reorganized Debtor* to finance the construction of units on one or more sites on the Real Property (a "Loan") which shall be disbursed in accordance with the terms of this Plan."

4

See Plan 1.4.1 E (emphasis added).

25. There is no ambiguity in the plain language of that definition that only the Reorganized Debtor is responsible to pay the Distributable Proceeds to the Disbursing Agent upon the sale of a condominium unit.

26. Section 4.4.2 of the Plan sets forth the Class Treatment for Class 4 Senior Unsecured Creditors as follows: "After class 1 and 2 Creditors holding Allowed Claims have been paid in full, the *Reorganized Debtor* shall pay over to the Dispersing Agent for the benefit of Class 3 Creditors holding Allowed Claims all or any remaining portion of any Available Distributable Proceeds received by *Reorganized Debtor* within 5 business days of receiving them until such time has all Allowed Claims in this class shall have been paid in full."

27. Section 4.4.2 makes no mention of a successors in interest, assignee, or designee assuming the responsibilities and obligations of the Reorganized Debtor. Nor does the language provide that the Available Distributable Proceeds are to be paid from any future sale of units other than those units sold by the Reorganized Debtor.

28. Regarding implementation of the Plan, Section 5.1.1 authorizes "the Reorganized Debtor to consummate each and every Plan Transaction referred to or described in [the] Plan." The Plan does not authorize or require third parties or other non-debtor entities to enter into Plan Transactions or obligate third-party or other non-debtor entities to perform the obligations of the Reorganized Debtor.

29. Pursuant to Section 5.4.2 of the Plan, the Reorganized Debtor was required to submit a declaration of condominium and divide the Property (as defined in the Plan) into phases. As stated above, the Reorganized Debtor recorded the Declaration of Condominium on February 18, 2003. The Reorganized Debtor subsequently created the Association in accordance with the Plan terms. See Plan Section 5.4.2.

30. As of the Effective Date of the Plan, the Reorganized Debtor assumed the Development

Permits issued by federal, state and local governments or agencies or departments. The Plan does not identify these Development Permits with specificity. See Plan Section 5.5.1.

31. The Plan dictates in Section 5.8.5 that the Reorganized Debtor shall pay over to the Disbursing Agent all distributable Loan and Site Sale proceeds. The Section make no provision for payments to be made by any other entity to the Distributing Agent.

### *Confirmation Order and Development Permits*

32. The Confirmation Order issued by the Court was executed on July 21, 2000.

33. Paragraph 28 of the Confirmation Order provides that the Plan is binding on "the debtor and any creditor or equity security Holder of the debtor whether the claim or interest of such creditor or equity security Holder is impaired under the plan and whether such creditor or equity security which has accepted the plan." Neither the Association, nor any potential purchaser of rights from the Association are bound by the terms of the Plan or the Confirmation Order.

34. The Association did not exist at the time the Confirmation Order was entered and could not have been bound by the terms of that order.

35. The Confirmation Order references "Development Permits" in Section 21 and incorporates by reference the terms of Exhibit B regarding "Provisions Relating to Development Permits (the "Development Provisions"). The Development Provisions purport to apply to "present or future owners of the property," however, the references are limited both in time and subject matter.

36. In each instance where the Development Provisions reference the obligations of the present of future owner of the property, they are specifically tied to the "variance" obtained for the purposes of developing the property and are further limited by the outside date of December 31, 2002.

37. Each of the Development Provisions are designed and intended to preserve the rights of a developer with respect to the variance and any changes that may arise between the Effective Date and December 31, 2002.

38. The Development Provisions make no reference to the $20,000 payments to be made

by the Reorganized Debtor to the Disbursing Agent upon unit sales pursuant to the Plan.

39. Nothing in the Development Provisions are binding on the Association and the Association is not seeking to benefit from the Development Provisions.

*Negative Pledge Agreement*

40. The Negative Pledge Agreement (the "NPA") was executed July 21, 2000, by Shepherds Hill Development Co., Inc., the Debtor, as Pledgor on the one hand and Edmond J. Ford as Agent for the creditors as Pledgee on the other.

41. The NPA was intended to protect the creditors and to solidify the rights of the creditors by preventing the Pledgor/Debtor from transferring or otherwise encumbering the Property without satisfying its Plan Obligations (as defined in the NPA). The NPA appears to have been created to prevent the Pledgor from circumventing the Plan Obligations to the detriment of the creditors.

42. The NPA required the written consent of the Pledgee in order to "voluntary mortgage, grant, cell, bargain, convey, transfer, lease or otherwise alienated all, or any part of the Subject Property." NPA Para. 5.

43. Additionally, the NPA established a "Supplemental Negative Pledge of Membership Interests" preventing Shepherds Hill Proponents, LLC and the Members of Shepherds Hill Proponents, LLC from transferring the membership interests of the Pledgor/Debtor pursuant to Paragraph 6.

44. The NPA created rights and obligations between the Pledgor and Pledgee only. The NPA makes no mention of and does not bind the Association or any other entity.

45. Nevertheless, Balzotti, continues to assert that the provisions set forth in the Plan require the Association or any future developer to comply with the terms of the Plan concerning the Debtor/Reorganized Debtor's obligation.

**RELIEF REQUESTED**

46. The Association hereby requests that this Court find and determine that the Plan Obligations created by the Plan and the Confirmation Order have been satisfied to the fullest extent

possible and that the expiration of the Development Right on February 24, 2013, extinguished any further obligations to any class of creditors established under the Plan.

47. It is undisputed that the Association is the fee owner of the Property and as such, it seeks to develop the land in accordance with its state law rights free and clear of any obligations the Debtor or Reorganized Debtor had or may have had pursuant to the Plan.

48. The requested relief is necessary to allow the Association to move forward with the sale of the Development Right and to clear the cloud on the title to the Property created by the recording of the NPA.

49. In light of the opinions handed down by the Superior Court and the NH Supreme Court and the plain language of the Plan, the Association seeks to sell its development right in the Property free and clear of any purported Plan Obligations that may have been created by the Plan, the Confirmation Order and the NPA.

50. The Association further requests that the Court permit the recording of a document terminating the NPA with the registry of deeds to address any title issue that may arise in the future with respect to the marketability of the Property.

51. The Association further requests that upon entry of an order determining the relative rights of the parties, that the Court administratively close the bankruptcy case.

## **NOTICE**

52. Notice of this Motion will be provided by ECF to: (i) the Office of the United States Trustee; (ii) the Trustee, (iii) the Debtor; and (iv) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, the Association requests that the Court enter an order: i) determining that the Plan Obligations have been satisfied and that any sale of a condominium unit by an entity other than the Reorganized Debtor shall not be encumbered by the Plan Obligations, ii) determining that the Association is not bound by the terms of the Plan, Confirmation order or NPA and may sell its development rights or other interests free and clear of any Plan Obligations, iii) authorizing the recordation of a document terminating the NPA with the registry of deeds, iv) administratively closing this bankruptcy case and v) for such other and further relief as may be necessary.

Respectfully submitted,

SHEPHERDS HILL HOMEOWNERS
ASSOCIATION, INC.
By its attorneys

DATED: April 16, 2021

*/s/ Jesse I. Redlener*
Jesse I. Redlener (NH Bar # 19658)
ASCENDANT LAW GROUP LLC
204 Andover Street, Suite 401
Andover, MA  01810
(978) 409-2038
jr@ascendantlawgroup.com

## CERTIFICATE OF SERVICE

      I, Jesse I. Redlener, hereby certify that, on April 16, 2021, I filed the *Motion For Determination* via the Court's CM/ECF electronic filing system ("CM/ECF"), which sent notice to all parties receiving notification through CM/ECF.

Dated:  April 16, 2021                                            */s/ Jesse I. Redlener*
                                                                          Jesse I. Redlener