753127                    97 OCT -7 PM 2: 14

# MORTGAGE DEED

This Mortgage, made the 7th day of October, nineteen hundred ninety-seven

Between Shepherds Hill Development Co., LLC, 5 Hallberg Park, North Reading, Middlesex County, Commonwealth of Massachusetts, hereinafter referred to as the Mortgagor, and Leonard A. Vigeant, having an address of 4 Hill Top Road, Hudson, Hillsborough County, New Hampshire, the Mortgagee,

Witnesseth, that to secure the payment of an indebtedness in the sum of Two Million Six Hundred Fifty Thousand and 00/100 Dollars ($2,650,000.00) lawful money of the United States, to be paid as provided for in a Note of even date with interest thereon to be computed from the date hereof, at the rate of eight per cent (8%) per annum, to be paid as set forth in said Note, and according to said Note bearing even date herewith, the Mortgagor hereby grants to the Mortgagee

All that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate in Hudson, Hillsborough County, New Hampshire, and being in the certain tract of sixty-six plus (66+) acres of land situated at the intersection of Route 111 and Kimball Road, Tax Map 25, Lot 214 as described in Book 5385, Page 1791 and Document No. 530386 of July 27, 1995, and recorded at the Hillsborough County Registry of Deeds, as set forth on Exhibit "A" hereto and as shown on a plan entitled, "Shepherd's Hill Site Plan" dated February 3, 1995, revised February 7, 1996, and to be recorded at the Hillsborough County Registry of Deeds, as Plan No. 28218 ("The Premises");

Together with all right, title, and interest of the Mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises; and

Together with all fixtures, chattels, and articles of personal property now or hereafter attached to or used in connection with said premises.

And the Mortgagor covenants with the Mortgagee as follows:

1. That the Mortgagor will pay the indebtedness as hereinbefore provided.

2. That the Mortgagor will keep any buildings on the premises insured against loss by fire for the benefit of the Mortgagee; that he will assign and deliver the policies to the Mortgagee, and that he will reimburse the Mortgagee for any premiums paid for insurance made by the Mortgagee on the Mortgagor's default in so insuring the buildings or in so assigning and delivering the policies

3. That no building on the premises shall be removed or demolished without the consent of the Mortgagee

4. That the whole of said principal sum and interest shall become due at the option of the Mortgagee after an "Event of Default" as set forth in paragraphs 13 and 14 below.

5. That the Mortgagor will pay all taxes, assessments, sewer rents, or water rates, and in default thereof, the Mortgagee may pay the same

6. That the Mortgagor within five (5) days upon request in person of within ten (10) days upon request by mail will furnish a written statement duly acknowledged of the amount due on the Mortgage and whether any offsets or defenses exist against the mortgage debt.

7. That notice and demand or request may be in writing and may be served in person or by mail.

8. That the Mortgagor warrants marketable the title to the premises.

BK5860PG1801

9. That any fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the Mortgagor, within thirty (30) days after notice and demand, will keep the premises insured against any other hazard that may reasonably be required by the Mortgagee. All of the provisions of paragraphs No. 2 and No. 9 above relating to fire insurance shall apply to the additional insurance required by this paragraph.

10. That in case of a foreclosure sale, said premises, or so much thereof, as may be affected by this Mortgage and as legally may be sold in one or more parcels or units may be so sold.

11. That if any action or proceeding be commenced (except action to foreclose this Mortgage or to collect the debt secured thereby), to which action or proceeding the Mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this Mortgage, all sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this Mortgage (including reasonable counsel fees), shall be paid by the Mortgagor, together with interest thereon at the rate of eighteen per cent (18%) per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in, or claim upon said premises attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage. In any action or proceeding to foreclose this Mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements, and allowances shall prevail unaffected by this covenant.

12. That the Mortgagor hereby collaterally assigns to the Mortgagee the rents, issues, and profits of the premises and all plans, permits, approvals, and rights of Declarant as further security for the payment of said indebtedness, and the Mortgagor grants to the Mortgagee the right to enter upon and take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues, and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this Mortgage is paid. The Mortgagee hereby waives the right to enter upon and take possession of said premises for the purpose of collecting said rents, issues, and profits, and the Mortgagor shall be entitled to collect and receive said rents, issues, and profits and to utilize all permits and approvals until default under any of the covenants, conditions, or agreements contained in this Mortgage, and agrees to use such rents, issues, and profits in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, sewer rents, water rates, and carrying charges becoming due against said premises. The Mortgagor will not, without the written consent of the Mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one (1) month in advance, and in the event of any default under this Mortgage will pay monthly in advance to the Mortgagee, or to any receiver appointed to collect said rents, issues, and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the Mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

13. **Events of Default Requiring Notice to Mortgagor.** Thirty (30) days after Notice to Mortgagor (as set forth below): (a) after failure to exhibit to the Mortgagee, within ten (10) days after demand, receipts showing payment of all taxes, water rates, sewer rents, and assessments; or (b) after the actual or threatened alteration, demolition, or removal of any building on the premises without the written consent of the Mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the Mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three (3) months from the issuance thereof; or (f) if on application of the Mortgagee two (2) or more fire insurance companies lawfully doing business in the State of New Hampshire refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition, or destruction in whole or in part of any of the fixtures, chattels, or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels, and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) if Mortgagor or any of its members should seek the protection of the U. S. Bankruptcy Code or be judged insolvent or seek an

BK5860PG1802

ATTORNEY ROBERT H. FRYER P. O. Box 867, Londonderry, NH 03053 (603) 434-5701    2

accommodation with its/their creditors; or (i) if Mortgagor fails to keep, observe, and perform any of the other covenants, conditions, or agreements contained in this Mortgage, shall constitute an "Event of Default," requiring notice to Mortgagor.

Upon the occurrence of any Event of Default as set forth in paragraph 13 above, Mortgagee, prior to acceleration, shall mail notice to Mortgagor as provided herein specifying (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Mortgagor, by which such breach must be cured, and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. If the breach is not cured on or before the date specified in the notice, Mortgagee at Mortgagee's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and Mortgagee shall have the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Mortgagee shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 14, including, but not limited to, reasonable attorney's fees.

14. **Events of Default - Notice to Mortgagee Not Required.** If Mortgagor (a) fails to make any payment of interest or principal or extension within ten (10) days immediately following its due date, or (b) if Mortgagor conveys any interest in the Premises without Mortgagee's prior written consent, Mortgagee shall be entitled to accelerate the Note and shall be entitled to the immediate payment of all amounts under the Note which have not then been paid, whether yet due or not, and to reasonable costs of collection, including reasonable attorney's fees; and Mortgagee shall have the statutory power of sale and any other remedies permitted by applicable law.

If Mortgagee invokes the STATUTORY POWER OF SALE, Mortgagee shall mail, by certified mail with return receipt requested, a copy of a notice of sale to Mortgagor as provided by applicable law. Mortgagee shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Mortgagee shall deliver to the purchaser Mortgagee's deed conveying indefeasible title to the Property so sold, discharged of all rights of redemption by Mortgagor. Mortgagee or Mortgagee's designee may purchase the Property at any sale. The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

15. **Mortgagor's Right to Reinstate.** Notwithstanding Mortgagee's acceleration of the sums secured by this Mortgage, Mortgagor shall have the right to have any proceedings begun by Mortgagee to enforce this Mortgage discontinued at any time prior to five (5) days before sale of the Property pursuant to the power of sale contained in this Mortgage or at any time prior to entry of a judgment enforcing this Mortgage if: (a) Mortgagor pays Mortgagee all sums which would be then due under this Mortgage, the Note, and notes securing Future Advances, if any, had no acceleration occurred; (b) Mortgagor cures all breaches of any other covenants or agreements of Mortgagor contained in this Mortgage; (c) Mortgagor pays all reasonable expenses incurred by Mortgagee in enforcing the covenants and agreements of Mortgagor contained in this Mortgage and in enforcing Mortgagee's remedies as provided in paragraph 14 hereof, including, but not limited to, reasonable attorney's fees; and (d) Mortgagor takes such action as Mortgagee may reasonably require to assure that the lien of this Mortgage, Mortgagee's interest in the Property and Mortgagor's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Mortgagor, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

16. **Assignment of Rents; Appointment of Receiver, Mortgagee in Possession.** As additional security hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Property, provided that Mortgagor shall, prior to acceleration under paragraph 14 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 13 or 14 hereof or abandonment of the Property, Mortgagee, in person, by agent, or by judicially appointed receiver, shall be entitled to enter upon, take possession of, and manage the Property and to collect the rents of the Property including those past due. All rents

BK 5860 PG 1803

ATTORNEY ROBERT H. FRYER P O Box 862 Londonderry, NH 03053 (603) 434-5791

3

accommodation with its/their creditors; or (i) if Mortgagor fails to keep, observe, and perform any of the other covenants, conditions, or agreements contained in this Mortgage, shall constitute an "Event of Default," requiring notice to Mortgagor.

Upon the occurrence of any Event of Default as set forth in paragraph 13 above, Mortgagee, prior to acceleration, shall mail notice to Mortgagor as provided herein specifying (1) the breach; (2) the action required to cure such breach; (3) a date, not less than thirty (30) days from the date the notice is mailed to Mortgagor, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. If the breach is not cured on or before the date specified in the notice, Mortgagee at Mortgagee's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and Mortgagee shall have the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Mortgagee shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 14, including, but not limited to, reasonable attorney's fees.

14. **Events of Default - Notice to Mortgagee Not Required.** If Mortgagor (a) fails to make any payment of interest or principal or extension within ten (10) days immediately following its due date, or (b) if Mortgagor conveys any interest in the Premises without Mortgagee's prior written consent, Mortgagee shall be entitled to accelerate the Note and shall be entitled to the immediate payment of all amounts under the Note which have not then been paid, whether yet due or not, and to reasonable costs of collection, including reasonable attorney's fees; and Mortgagee shall have the statutory power of sale and any other remedies permitted by applicable law.

If Mortgagee invokes the STATUTORY POWER OF SALE, Mortgagee shall mail, by certified mail with return receipt requested, a copy of a notice of sale to Mortgagor as provided by applicable law. Mortgagee shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Mortgagee shall deliver to the purchaser Mortgagee's deed conveying indefeasible title to the Property so sold, discharged of all rights of redemption by Mortgagor. Mortgagee or Mortgagee's designee may purchase the Property at any sale. The proceeds of any sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

15. **Mortgagor's Right to Reinstate.** Notwithstanding Mortgagee's acceleration of the sums secured by this Mortgage, Mortgagor shall have the right to have any proceedings begun by Mortgagee to enforce this Mortgage discontinued at any time prior to five (5) days before sale of the Property pursuant to the power of sale contained in this Mortgage or at any time prior to entry of a judgment enforcing this Mortgage if: (a) Mortgagor pays Mortgagee all sums which would be then due under this Mortgage, the Note, and notes securing Future Advances, if any, had no acceleration occurred; (b) Mortgagor cures all breaches of any other covenants or agreements of Mortgagor contained in this Mortgage; (c) Mortgagor pays all reasonable expenses incurred by Mortgagee in enforcing the covenants and agreements of Mortgagor contained in this Mortgage and in enforcing Mortgagee's remedies as provided in paragraph 14 hereof, including, but not limited to, reasonable attorney's fees; and (d) Mortgagor takes such action as Mortgagee may reasonably require to assure that the lien of this Mortgage, Mortgagee's interest in the Property and Mortgagor's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Mortgagor, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

16. **Assignment of Rents; Appointment of Receiver, Mortgagee in Possession.** As additional security hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Property, provided that Mortgagor shall, prior to acceleration under paragraph 14 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 13 or 14 hereof or abandonment of the Property, Mortgagee, in person, by agent, or by judicially appointed receiver, shall be entitled to enter upon, take possession of, and manage the Property and to collect the rents of the Property including those past due. All rents

collected by Mortgagee or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorney's fees, and then to the sums secured by this Mortgage. Mortgagee and the receiver shall be liable to account for only those rents actually received.

17. **Future Advances.** Upon request of Mortgagor, Mortgagee, at Mortgagee's option prior to discharge of this Mortgage, may make Future Advances to Mortgagor. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Note.

18. **Release.** Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Mortgagee shall discharge this Mortgage without charge to Mortgagor. Mortgagor shall pay all costs of recordation, if any.

19. **Waiver of Homestead; Dower and Curtesy.** Not Homestead Property

This Mortgage may not be changed or terminated orally. The covenants contained in this Mortgage shall run with the land and bind the Mortgagor, the heirs, personal representatives, successors, and assigns of the Mortgagor and all subsequent owners, encumbrancers, tenants, and subtenants of the premises, and shall enure to the benefit of the Mortgagee, the personal representatives, successors, and assigns of the Mortgagee and all subsequent holders of this Mortgage. the "Mortgagor" shall be construed as if it read "Mortgagors" and the word "Mortgagee" shall be construed as if it read "Mortgagees" whenever the sense of this Mortgage so requires.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor.

IN PRESENCE OF:    SHEPHERDS HILL DEVELOPMENT CO., LLC

By _____
   Its Manager

Anthony F Balzotti
Print Name

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this 7th day of October, 1997, by Caesar Balzotti, manager of Shepherds Hill Development Co., LLC, a New Hampshire limited liability company, on behalf of the company.

_____
Justice of the Peace/Notary Public

BK5860PG1804

c:\vigeant\mortgage.3

ATTORNEY ROBERT H. FRYER P.O. Box 867, Londonderry, NH 03053 (603) 434-5791        4

-2-

12.     N 56° 57' 33" E, a distance of 910.67 feet, to the point of beginning.

Containing 7.62 acres, more or less, according to said Plan.

**TRACT II:**

Beginning at a point on the northerly side of Kimball Hill Road at an intersection of stone walls at land now or formerly of Daniel and Denise Freeman at the southeasterly corner of the premises herein described and conveyed; thence along said road and stone wall

1.      S 70° 01' 10" W, a distance of 74.88 feet to a point at the southerly end of said stone wall; thence continuing along said road

2.      S 79° 03' 54" W, a distance of 291.43 feet to a point at the easterly end of a stone wall; thence continuing along said road and stone wall

3.      S 88° 35' 02" W, a distance of 109.86 feet to a point; thence

4.      S 58° 03' 28" W, a distance of 109.43 feet to a point at the westerly end of said stone wall; thence continuing along said road

5.      S 82° 37' 48" W, a distance of 102.78 feet to a concrete bound; thence

6.      S 78° 27' 24" W, a distance of 393.95 feet to a concrete bound; thence

7.      Along a curve with a radius of 568.11 feet a distance of 426.89 feet to a concrete bound; thence

8.      N 58° 29' 24" W, a distance of 238.76 feet to a concrete bound; thence

9.      Along a curve with a radius of 728.94 feet, a distance of 219.75 feet to a point at land now or formerly of Walter and Donna Quinn; thence along said land

10.     N 51° 43' 51" E, a distance of 294.90 feet to a point; thence along said land now or formerly of James and Nina Murray and now or formerly of John and Doris Wollen

11.     N 53° 43' 49" W, a distance of 320.00 feet to a point; thence

12.     N 55° 35' 47" W, a distance of 102.00 feet to a drill hole at the southerly end of a stone

g:\client\vigeant\Exhibit A

## Exhibit A

Three certain tracts or parcels of land situated in Hudson, County of Hillsborough, State of New Hampshire, being Lot 210/Map 25; Lot 214/Map 25; and Lot 24-6/Map 26, as shown on a plan entitled, "Consolidation Plan Lots 210 & 214 / Map 25 and Lots 11 & 24-6 / Map 26 N.H. ROUTE 111 & KIMBALL HILL RD., HUDSON, N.H." prepared for Bay New Hampshire Corp., dated September, 1985, Scale: 1"= 200', surveyed by Maurice G. Paquette of Maynard & Paquette, Inc., recorded as Plan No. 18881 on February 14, 1986 at the Hillsborough County Registry of Deeds (hereinafter referred to as the "Plan"), more particularly bounded and described as follows:

### TRACT I:

Beginning at a point on the southerly side of New Hampshire Route 111, at the northerly corner of the premises herein described and conveyed; thence along land now or formerly of Grace Levesque

1. S 38° 09' 56" E, a distance of 137.01 feet to a drill hole at the northerly end of a stone wall at land now or formerly of Benson Wild Animal Farm, Inc.; thence along said land and stone wall

2. S 38° 09' 56" E, a distance of 121.85 feet to a drill hole; thence

3. S 38° 17' 57" E, a distance of 129.17 feet to a drill hole; thence

4. S 46° 46' 42" W, a distance of 196.18 feet to a drill hole; thence

5. S 52° 20' 59" W, a distance of 264.12 feet to a drill hole; thence

6. S 42° 54' 14" W, a distance of 105.63 feet to a drill hole at the southerly end of said stone wall at land now or formerly of Robert and Be Greenwood; thence along said land and land now or formerly of Robert and Paula Pelletier

7. N 55° 35' 47" W, a distance of 289.32 feet to a point; thence

8. S 35° 24' 15" W, a distance of 222.29 feet to a point on the northerly side of Hamblett Avenue; thence along said Avenue

9. N 56° 03' 24" W, a distance of 90.00 feet to a point; thence

10. N 50° 03' 24" W, a distance of 125.00 feet to a point; thence

11. N 31° 07' 33" W, a distance of 80.17 feet to a point being the southeasterly corner of the intersection of Hamblett Avenue and N.H. Route 111; thence along the southerly side of N.H. Route 111

-3-

wall at land now or formerly of Arthur J. Provencher; thence along said land and stone wall

13. N 42° 54' 14" E, a distance of 105.63 feet to a drill hole; thence

14. N 52° 20' 59" E, a distance of 264.12 feet to a drill hole; thence

15. N 46° 46' 42" E, a distance of 196.18 feet to a drill hole; thence

16. N 38° 17' 57" W, a distance of 129.17 feet to a drill hole; thence

17. N 38° 09' 56" W, a distance of 121.85 feet to a drill hole at the northerly end of said stone wall at land now or formerly of Grace Levesque; thence along said land

18. N 57° 20' 04" E, a distance of 461.85 feet to a point at land now or formerly of the State of New Hampshire; thence along said land

19. S 43° 03' 04" E, a distance of 967.02 feet to a point at a stone wall; thence along said land and stone wall

20. N 45° 33' 26" E, a distance of 87.69 feet to a point; thence

21. N 44° 02' 55" E, a distance of 129.55 feet to a point; thence

22. North 35° 53' 55" E, a distance of 27.65 feet to a point; thence

23. N 46° 48' 26" E, a distance of 164.37 feet to a point; thence

24. N 55° 02' 50" E, a distance of 268.90 feet to a point at land now or formerly of Arthur J. Provencher, Trustee of Bush Hill Realty Trust; thence along said land and stone wall

25. S 19° 09' 32" E, a distance of 161.67 feet to a point; thence

26. S 18° 10' 46" E, a distance of 82.84 feet to a point at land now or formerly of George and Helen Ahern; thence along said land, land now or formerly of Daniel and Denise Freeman and stone wall

27. S 22° 52' 07" E, a distance of 36.85 feet to a point; thence

28. S 0° 51' 52" E, a distance of 35.84 feet to a point; thence

29. S 10° 00' 18" W, a distance of 62.66 feet to a point; thence

BK5860PG1807

g:\client\vigeant\exhibit.A

-4-

30. S 0° 40' 21" E, a distance of 40.34 feet to a point; thence

31. S 11° 30' 14" W, a distance of 87.76 feet to a point; thence

32. S 9° 55' 31" W, a distance of 96.22 feet to a point; thence

33. S 44° 55' 31" W, a distance of 78.70 feet to a point; thence

34. S 13° 40' 22" E, a distance of 209.29 feet to a point; thence

35. S 16° 35' 07" E, a distance of 76.27 feet to a point; thence

36. S 13° 56' 24" E, a distance of 30.71 feet to a point; thence

37. S 15° 11' 03" E, a distance of 149.66 feet to the point of beginning.

Containing 44.68 acres, more or less, according to said Plan.

### TRACT III:

Beginning at a drill hole at the intersection of the stone walls at land now or formerly of Benson Wild Animal Farm, Inc. and land now or formerly of George and Helen Ahern, being a distance of 904.30 feet, along land now or formerly of Benson Wild Animal Farm, Inc., from the northerly side of Kimball Hill Road, at the southwesterly corner of the premises herein described and conveyed; thence along said stone wall and land now or formerly of Benson Wild Animal Farm, Inc.

1. N 18° 10' 46" W, a distance of 82.84 feet to a point; thence

2. N 19° 09' 32" W, a distance of 161.67 feet to a point at the northerly end of said stone wall at land now or formerly of the State of New Hampshire; thence along said land

3. N 22° 12' 29" W, a distance of 24.79 feet to a point at the southerly end of a stone wall; thence along said land and stone wall

4. N 52° 23' 57" E, a distance of 85.36 feet to a point; thence

5. N 52° 12' 08" E, a distance of 141.03 feet to a point; thence

6. N 47° 03' 37" E, a distance of 144.13 feet to a point; thence

BK5860PG1808

-6-

26. S 61° 01' 41" W, a distance of 26.81 feet to a point; thence

27. N 86° 55' 25" W, a distance of 31.49 feet to a point; thence

28. N 72° 39' 21" W, a distance of 51.74 feet to a point; thence

29. N 71° 02' 08" W, a distance of 58.32 feet to a drill hole; thence

30. N 50° 42' 09" W, a distance of 112.73 feet to a drill hole; thence

31. N 34° 33' 41" W, a distance of 59.90 feet to a drill hole; thence

32. S 84° 22' 33" W, a distance of 165.72 feet to the point of beginning.

Containing 16.01 acres, more or less, according to said Plan.

Meaning and intending to describe and convey the same premises shown as Shepherd's Hill Map 25/Lot 214 on a plan of land entitled,"Property Plan Map 25/Lot 214 SHEPHERD'S HILL KIMBALL HILL ROAD HUDSON, NEW HAMPSHIRE" Prepared for Leonard Vigeant by Maynard & Paquette, Inc. Scale 1" =200' Date: February 3, 1995, revised through September 27, 1996 being sheet 2 of 8 of a group of plans recorded with the Hillsborough County Registry of Deeds as Plan No. 28218. Reference is made to said Plan for a more accurate and detailed description.

The above described premises are subject to:

1. Terms and provisions of a Development Agreement by and between Leonard Vigeant and the Town of Hudson dated October 7, 1996 and recorded at Book 5758, Page 667, as amended by Amendment to Development Agreement dated June 13, 1997 recorded at Book 5823, Page 606.

2. Agreement and Covenant regarding private roads and private waste disposal dated October 7, 1996 and recorded at Book 5758, Page 680.

3. Conservation Easement to the Town of Hudson dated October 7, 1996 and recorded at Book 5758, Page 684.

4. State of New Hampshire Wetlands and Non-Site Specific Permit No. 96-01582 dated September 27, 1996 and recorded at Book 5758, Page 686.

5. Matters as set forth on Plan No. 28218 as amended by Plan 28636.

g:\client\vigeant\Exhibit A

-5-

7. N 48° 40' 15" E, a distance of 57.05 feet to a point at the northerly end of said stone wall; thence along said land

8. S 80° 01' 24" E, a distance of 750.22 feet to a point; thence

9. S 66° 51' 44" E, a distance of 425.12 feet to a point; thence

10. S 57° 55' 19" E, a distance of 294.45 feet to a point at the northerly end of a stone wall at land now or formerly of Monica and Alex Abucewicz; thence along said stone wall, said land, and land now or formerly of George and Helen Ahern

11. S 47° 45' 05" W, a distance of 96.86 feet to a point; thence

12. N 68° 07' 00" W, a distance of 70.20 feet to a point; thence

13. S 70° 24' 35" W, a distance of 204.79 feet to a point; thence

14. N 87° 37' 24" W, a distance of 60.34 feet to a point; thence

15. S 56° 39' 42" W, a distance of 52.00 feet to a point; thence

16. N 36° 09' 35" W, a distance of 86.23 feet to a point; thence

17. S 60° 06' 57" W, a distance of 127.31 feet to a point; thence

18. S 54° 20' 07" W, a distance of 92.83 feet to a point; thence

19. N 62° 34' 18" W, a distance of 93.77 feet to a point; thence

20. S 88° 27' 23" W, a distance of 50.79 feet to a point; thence

21. S 70° 26' 27" W, a distance of 210.17 feet to a point; thence

22. N 33° 14' 33" W, a distance of 84.61 feet to a point; thence

23. S 80° 48' 21" W, a distance of 50.71 feet to a point; thence

24. S 63° 43' 37" W, a distance of 64.67 feet to a point; thence

25. S 31° 11' 29" W, a distance of 31.29 feet to a point; thence

g:\client\vigeant\Exhibit A

BK5860PG1809

-7-

6. All other easements, rights of way, encumbrances, agreements, reservations and other matters of record.

Meaning and intending to describe the same premises conveyed to Leonard A. Vigeant by deed of Hilco Property Services, Inc., dated November 5, 1992 and recorded with the Hillsborough County Registry of Deeds at Book 5385, Page 1791.

g:\client\vigeant\Exhibit A

BK5860PG1811